## NEBLETT v. BARRON et al.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 15, 1910. On Rehearing, March 11, 1911.)

1. CHATTEL MORTGAGES (§ 275*) — FORECLOSURE—PROPER PARTIES.

In a proceeding to enforce a chattel mortgage, others who claim a prior lien on the mortgaged property are proper parties, and it is immaterial that the mortgagee has sold the mortgaged property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 562; Dec. Dig. § 275.*]

2. PLEADING (§ 228*)—EXCEPTIONS.

Matters not appearing on the face of a petition cannot be reached by exception.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 584–590; Dec. Dig. § 228.*]

3. APPEAL AND ERROR (§ 667*)—RECORD—CONCLUSIVENESS—RECITALS IN JUDGMENT.

Where the judgment recited due service on the principal defendant, plaintiff cannot complain on appeal that such defendant was not cited by the intervener who sought to foreclose lien superior to that of plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2862, 2863; Dec. Dig. § 667.*]

4. APPEAL AND ERROR (§ 877*)—PERSONS ENTITLED TO ALLEGE ERROR.

In a proceeding to foreclose a chattel mortgage the mortgagee cannot complain on appeal that the intervener who sought to enforce a landlord's lien on the same property did not serve citation upon the defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3560–3572; Dec. Dig. § 877.*]

5. APPEAL AND ERROR (§ 1050*)—REVIEW ON THE SAME.

The admission of oral testimony of a bookkeeper as to an itemized account of supplies furnished by a firm for which he worked is cured by the subsequent introduction of the books of account, with proof that they had been regularly and accurately kept.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

6. EVIDENCE (§ 158*)—ORAL EVIDENCE—BEST EVIDENCE.

In a proceeding to enforce a landlord's lien for supplies furnished his tenant, oral testimony that supplies were furnished the tenant's employé, upon his written orders, is admissible; the orders themselves not constituting any better evidence that they were given by the tenant, and that supplies were furnished thereon, than the positive testimony of a witness having knowledge of the facts.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. § 158.*]

7. APPEAL AND ERROR (§ 1002*)—REVIEW — FINDINGS.

The finding by the trial court on a contested issue of fact will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

8. CHATTEL MORTGAGES (§ 144*)—LANDLORD'S LIEN—PRIORITY.

The prior registration of a mortgage upon a tenant's future crop will not defeat the landlord's lien conferred by Rev. St. 1895, art. 3235, declaring that all persons leasing land shall have a preference lien for all money and provisions furnished by the landlord to enable a tenant to make a crop, and article 3237, declaring that such lien shall continue so long as the property remains on the demised premises and for one month thereafter, and shall be superior to all exemptions; a mortgagee taking his mortgage with notice of the landlord's statutory rights.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. § 241; Dec. Dig. § 144.*]

9. CHATTEL MORTGAGES (§ 288*) — FORECLOSURE—RIGHT TO PROCEEDS.

Where plaintiff sought to foreclose a mortgage upon a part of a tenant's crop and certain animals, and the landlord intervened, claiming priority by virtue of his general lien, plaintiff cannot complain of judgment in favor of the landlord on the ground that he had distrained other property on the ground out of which he might satisfy his lien, where the judgment required him to first exhaust such property.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 577, 578; Dec. Dig. § 288.*]

10. AGRICULTURE (§ 12*)—LABORER'S LIEN—FILING OF NOTICE — ACCRUAL OF DEBT — "DUE."

Rev. St. 1895, art. 3339a, gives farm laborers a lien on the agricultural products, while article 3339b requires a laborer desirous of such a lien to make duplicate accounts for his service, and to file one with his employer and one with the county clerk within 30 days after the indebtedness shall have accrued. Article 3339c declares that all wages, if service is, by agreement, performed by the day or week, shall be due and payable weekly. *Held*, that the term "due" used in the last section is equivalent to "owing," and includes all debts payable in præsenti or in futuro, and this indebtedness for farm labor accrues weekly within the purview of article 3339b, where the services are rendered by the day, even though it was agreed that the laborers should not be paid until the crop was sold, and hence to protect his lien the laborer must file the account within 30 days after the expiration of the week in which the services were rendered.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 40, 41; Dec. Dig. § 12.*

For other definitions, see Words and Phrases, vol. 3, pp. 2213–2220; vol. 8, p. 7643.]

11. APPEAL AND ERROR (§ 239*)—PRESENTATION OF GROUND FOR REVIEW IN COURT BELOW—NECESSITY.

In a proceeding to foreclose a chattel mortgage, in which property was sequestered,

plaintiff cannot complain that the costs of the sequestration were assessed against him, where there was no motion to retax the costs, and the record showed that the only sequestration had was sued out by plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 239.*]

Appeal from Erath County Court; J. B. Keith, Judge.

Action by Charles Neblett against H. C. Barron, in which J. W. Hall and Adam Caughman intervened. From a judgment for interveners, plaintiff appeals. Affirmed as to intervener Hall, and reversed and rendered as to intervener Caughman.

See, also, 104 Tex. 111, 134 S. W. 208.

Daniel & Carlton, of Stephenville, for appellant. Eli Oxford, of Wichita Falls, and Wm. Pannill, of Stephenville, for appellees.

CONNER, C. J. Appellant Neblett, on October 31, 1908, sued H. C. Barron, a tenant on the farm of J. W. Hall, upon a note for $542.76, and to foreclose a mortgage given by Barron to secure the note upon two certain mules and the first, second, third, fourth, fifth, and sixth bales of lint cotton to be raised on Hall's farm. Neblett sequestered the mules and cotton, and soon thereafter J. W. Hall intervened in the suit, seeking a judgment against Barron upon an itemized account for supplies, tools, etc., furnished said Barron with which to make the crop of 1908, amounting to $275.75. He alleged that therefore he had the landlord's preference lien upon the cotton sequestered by Neblett, and he prayed as against Neblett for a foreclosure of the lien. Yet later one Adam Caughman also intervened, claiming an indebtedness against Barron in the sum of $39.60 for daily labor, to secure which he also asserted a lien on the cotton sequestered by Neblett. Both intervener Hall and Caughman alleged that Neblett had converted the six bales of cotton mentioned in his mortgage and sequestered by him, and they prayed for judgment for its value, less the amount of the landlord's rent, which had already been paid to Hall, in so far as necessary to satisfy their several demands.

The trial resulted in a judgment in substance that Neblett recover as against Barron the amount of his debt and for a foreclosure of his lien, and for Hall and Caughman as against Barron for the value of the cotton, but provided that certain other cotton and crops of the tenant, Barron, who had not answered in this suit, which had been distrained by Hall, be sold, and the proceeds, after deducting costs of gathering and the costs of the suit in which the distress warrant had issued, be applied in satisfaction of the judgment in this case in Hall's favor, and that for any balance due him he should have judgment and execution against Neblett; that if, after the satisfaction of Hall's claim, there yet remained anything of the

judgment against Neblett for the value of the cotton sequestered by him (fixed at the sum of $168.26) that Adam Caughman should have judgment and execution for such value so left in Neblett's hands to the extent of his, Caughman's, claim. From this judgment, Neblett has appealed.

[1, 2] It is elementary that all persons interested in the subject-matter of litigation are proper parties, and the court, therefore, did not err in overruling the exception to intervener Hall's petition because of the fact that appellant had disposed of the cotton, and that intervener sought to hold him liable as for a conversion. Appellant's action throughout was to establish and foreclose a mortgage lien on the cotton; so, too, was that of intervener Hall, the latter asserting a superior lien, so that the vital questions in the case were questions of priority of lien, and the actual disposition of the cotton was immaterial save as to the issue of conversion and as a guide to the court in forming his judgment. Besides, the fact of sale referred to did not appear on the face of intervener's petition, and the exceptions, therefore, did not reach it.

[3, 4] The objection to the proof of intervener Hall's itemized account against the tenant, Barron, on the ground that Barron was not well cited, is not well taken, in view of the fact recited in the judgment that he was cited and of the character of the action. Proof of supplies advanced to the tenant was one of the necessary steps in establishing Hall's asserted preference lien, and appellant cannot be heard on a question of service in which the tenant, Barron, alone is interested, and of which he has made no complaint.

[5] The objection to the oral testimony of the bookkeeper of the firm which furnished the supplies, to the effect that the itemized account was correct, was rendered harmless by the subsequent introduction of the book of accounts to the same effect, with proof that the book had been regularly and correctly kept.

[6] Nor was there error in the oral evidence that some of the items had been furnished an employé of the tenant on written orders of the latter. The material inquiry was whether the items had been advanced by the landlord. They were charged to him, they have not been disputed by the tenant, and the form and contents of the orders were immaterial. They would not constitute better evidence of the fact that they were given by the tenant, and that supplies were furnished thereon, than the positive testimony of a witness having knowledge of the facts.

[7] It is insisted that the judgment in favor of the intervener is erroneous on the ground that he waived his lien. But this was clearly a controverted issue of fact denied by him, and the finding of the court is

in his favor. We therefore cannot disturb the finding.

[8] The suggestion that intervener Hall was affected by the prior registration of appellant's mortgage, and that thereafter the lien for supplies furnished would be in subordination to the mortgage lien of appellant, is, we think, contrary to the terms and effect of article 3235 of the Revised Statutes, conferring the landlord's lien, which declares that: "All persons leasing or renting lands or tenements, at will, or for a term, shall have a preference lien * * * for all money and the value of all animals, tools, provisions and supplies furnished by the landlord to the tenant to enable the tenant to make a crop on such premises." Article 3237 is to the effect that such lien as to agricultural products, and as to the animals, tools, or other property furnished to the tenant, shall continue so long as they remain on the land or leased premises and for one month thereafter, and that such lien shall be superior to all laws exempting such property from force sales. At the time appellant took his mortgage he was affected with notice of the landlord's right as conferred by this statute, and his lien was evidently in subordination to the right of the landlord. Any other construction would in effect oftentimes altogether deprive a farm tenant of the ability to bring into existence agricultural products upon which a lien of any kind could operate, and the evident purpose of the statute is, as it says, to give the landlord a preference lien on all supplies necessary to the end in view.

[9] The objection to the judgment in favor of intervener Hall upon the ground that the record shows that he had also distrained other property of the tenant (corn and cotton) sufficient to satisfy the account for supplies furnished is answered at all events by the form of the judgment. The record fails to show the value of such other property levied upon by Hall; but, whatever its value, the form of the judgment is such that it in no event is to operate against appellant, if such other property is in value sufficient to liquidate the account after deducting the costs in the suit in which the levy was made.

[10] Appellant's fifteenth assignment of error, however, we think is well taken. It is to the effect that the record fails to show a lien in favor of the intervener Caughman. Caughman testified that: "I worked for D. C. Barron as a hired hand from May 25th to August 6th, 1908, assisting him in making the crop on the J. W. Hall place for the year 1908, at the rate of $1 per day, making a total of $42 for my work, which Barron agreed to pay out of the first cotton he sold." On cross-examination he testified: "My contract with Mr. Barron was that I was to work by the day, and was to receive $1 per day wages. The work I did was on the 125 acres rented by Barron from J. W. Hall, and worked on the entire 125 acres in both corn

160 S.W.—74

and cotton. This account for my wages has not yet been paid. * * * At the time I filed my account Mr. Neblett had taken possession of the cotton; but I don't know whether it had been sold or not. Mr. Barron had told me that the plaintiff had taken possession, but said nothing as to whether it had been sold. I then made out and filed the account, and then gave Barron and Hall a copy. ' * * * My money was not due until the cotton was sold. * * * My money was to come out of the first cotton sold, and I could not file the account until the money was due. * * * None of the cotton had been sold except what was taken possession of by Mr. Neblett, who also took the mules." The record further shows that Caughman made out and filed his account for record with the county clerk of Erath county on November 7, 1908.

Article 3339a of the Revised Statutes gives a farm hand a lien upon agricultural products that may be created in whole or in part by his labor "to secure the payment of the amount due" by the contract of employment. The next article, 3339b, provides, in so far as is here pertinent, that the laborer who shall have performed services shall make duplicate accounts for such services for the amount due him for the same, and present one of the duplicates to his employer within 30 days after the said indebtedness shall have "accrued." The other of the said duplicate accounts shall within the time mentioned be filed with the county clerk of the county in which the services were rendered, to be recorded by the clerk in a book kept for that purpose. A compliance with these requirements is necessary to fix and preserve the lien given in the chapter on the subject, and it is provided that a purchaser from the owner without actual or constructive notice of the claims of the lienholder shall take good title. The next article, 3339c, is as follows: "Under the operation of this chapter, all wages, if service is by agreement performed by the day or week, shall be due and payable weekly, or if by the month, shall be due and payable monthly. All payments to be made in lawful money of the United States."

In the absence of the statutes referred to, Caughman had no lien to secure payment of the services performed by him, and he must bring himself within the statutes in order to be accorded the relief he sought in this suit. While the statutes evince the purpose of the Legislature to confer the benefit of the lien, it also has been careful to guard the rights of others by specifically requiring the prompt record of the claim for wages required by the law. And where, as here, the labor is by the day, the statute specifically declares that, within the meaning of the chapter on the subject, the wages therefor shall be due and payable weekly. In view of which, in cases of daily or weekly service, the fact that by the terms of the agreement the wages are to be paid at a future time is

immaterial. The term "due" does not necessarily mean that the debt is immediately payable. In commercial law it is often used as synonymous with "owing," and includes all debts, whether payable in præsenti or in 'futuro, and it is in this latter sense, we think, it is used in the statute under consideration. In other words, in such cases the wages not only "accrue," within the meaning of the statute—for the purpose of securing the lien—at the end of the week, but are also then due and payable, regardless of an agreement to the contrary. Inasmuch, therefore, as it appears without dispute that he attempted to fix his lien by the record of his claim some two months or more after his wages accrued and were due within the meaning of. the statute, we think the court erred in his judgment in favor of Caughman.

[11] This disposes of all assignments save one complaining of the action of the court in taxing the cost of sequestration against appellant; but, in view of the fact that no motion was made below to retax the costs, and of the further fact that the only sequestration proceedings evidenced by the record in this case are those sued out by appellant, the assignment must be overruled.

We conclude that the judgment should in all respects be affirmed, save that part thereof in favor of Adam Caughman, as to whom the judgment is reversed and here rendered in favor of appellant.

On Rehearing.

PER CURIAM. Motion granted, and judgment of the county court affirmed as per our original opinion and the opinion of Supreme Court on certified question. See. 104 Tex. 111, 134 S. W. 208.