[Civ. No. 4852.   First Appellate District, Division Two.—August 27, 1925.]

## G. W. BRAINARD, Appellant, v. NICK ROGERS, Defendant; W. M. GRADY, Intervener and Respondent.

[1] GARNISHMENT—PROCEEDS OF FIRE INSURANCE POLICY—ADJUSTMENT OF LOSS.—The proceeds of a fire insurance policy are subject to garnishment at the instance of the creditor of the insured subsequent to a fire loss but prior to an adjustment of that loss between the insurer and the insured.

[2] ID. — STATUTORY CONSTRUCTION — MONEYS OWING ATTACHMENT DEBTOR—DUE DATE.—The right to attach or garnish the property or interests of a debtor is purely statutory; and from the fact that in sections 537 et seq. of the Code of Civil Procedure the expressions "belonging to" and "owing" are used in the disjunctive, it follows that the legislature intended to authorize the attachment of moneys which were owing to the attachment debtor, though not yet due, as well as moneys and other property belonging to him which the garnishee then had in his possession.

[3] ID. — RIGHT AGAINST INSURANCE COMPANY — PRESENTATION OF PROOFS OF LOSS.—The right which the insured possesses against an insurance company under a policy of insurance on property is subject to garnishment at the suit of creditors of the insured, and while creditors of the insured cannot compel payment of the policy by process of garnishment against the insurance company if the insured himself has forfeited the right to enforce collection by violating conditions contained in the policy, the fact that in order to be entitled to the proceeds of the policy the debtor must perform certain conditions precedent, as furnishing proofs of loss, does not preclude garnishment, but the creditor may make proofs if the insured fails to do so. Nor does the fact that the loss has not been adjusted prevent garnishment.

(1) 28 C. J., p. 164, n. 55, 56, p. 165, n. 74.   (2) 28 C. J., p. 129, n. 94, p. 130, n. 95.   (3) 28 C. J., p. 165, n. 68.

APPEAL from a judgment of the Superior Court of Fresno County.   D. A. Cashin, Judge.   Reversed.

The facts are stated in the opinion of the court.

---

1.  Claims on unadjusted insurance losses as subject to garnishment, note, 59 L. R. A. 366.
2.  See 13 Cal. Jur. 6.
3.  See 12 R. C. L. 804.

Joseph Kirk, Elmore Winkler and Joseph A. Pritchard for Appellant.

M. K. Harris and James A. Burns for Respondent.

W. T. Craig as *amicus curiae* in support of Appellant.

NOURSE, J.—This is an action for goods sold and delivered. It was commenced on September 29, 1921, in a complaint filed against Nick Rogers, defendant. At that time this defendant had sustained a complete loss by fire of his merchandise, furniture and fixtures. The property destroyed was covered by two policies of fire insurance amounting to $5,000. When the complaint was filed a writ of attachment was issued and the proceeds of the fire insurance policies in the hands of the insurers was garnished. Thereafter W. D. Grady intervened in the action and alleged that he was the assignee of the insurance moneys and that as such assignee he had obtained a judgment by stipulation with the defendant Nick Rogers for $2,200 against the insurance company. The trial court rendered judgment in favor of the plaintiff against Nick Rogers in the full sum demanded in the complaint, but adjudged that the intervener was the owner of the insurance moneys garnished by the plaintiff and ordered them discharged from the lien of plaintiff's attachment. From this portion of the judgment in favor of the intervener the plaintiff appeals and the appeal is resisted by the intervener alone. The appeal is presented upon a record prepared under the provisions of section 953a, Code of Civil Procedure.

[1] The sole question which is in issue on the appeal is: Are the proceeds of a fire insurance policy subject to garnishment at the instance of the creditor of the insured subsequent to a fire loss but prior to an adjustment of that loss between the insurer and the insured? Our answer to this question is in the affirmative for the reasons which will follow.

[2] The right to attach or garnish the property or interests of a debtor is purely statutory. The law of this state conferring the right and providing the procedure for the exercise thereof is found in sections 537 and following

of the Code of Civil Procedure. In subdivision 5 of section 542, Code of Civil Procedure, where the duties of the sheriff in the execution of a writ of attachment are detailed, it is provided that debts and credits not capable of manual delivery must be attached by leaving ''with the person *owing* such debts or *having* in his possession . . . such credits'' a copy of the writ. In section 543, relating to the instructions to be given the sheriff by the plaintiff or his attorney, the levy is made to apply to any person ''who has in his possession . . . any credits . . . *belonging* to the defendant, or is *owing any debt* to the defendant.'' Section 544, relating to the liability to the plaintiff of a garnishee, uses the language: ''All persons *having in their possession* . . . any credits . . . *belonging* to the defendant, or *owing any debts* to the defendant . . . shall be . . . liable to the plaintiff for the amount of such credits, property or debts.'' Similar language is used in section 545, relating to the procedure for citation to garnishee to appear before a court, where it provides that ''any person *owing* debts to the defendant or having in his possession . . . any credits . . . *belonging to* the defendant may be required to attend before the court . . . and be examined on oath respecting the same.'' It will be noted that throughout these sections the expressions ''belonging to'' and ''owing'' are used in the disjunctive. But one conclusion may be drawn from this and that is that the legislature intended to authorize the attachment of moneys which were owing the debtor as well as moneys and other properties belonging to the debtor which the garnishee then had in his possession. Looking at the code sections in this light it follows that moneys which are owing the debtor, though not yet due, are subject to garnishment because the term ''owing'' includes an immature as well as a mature obligation. This is in harmony with what was said in *Dunsmoor* v. *Furstenfeldt,* 88 Cal. 522, 529 [22 Am. St. Rep. 331, 12 L. R. A. 508, 26 Pac. 518], where the supreme court say: ''Any kind of obligation of one man to pay money to another is a debt. 'A debt signifies what one owes. There is always some obligation that it shall be paid; but the manner in which . . . it is to be paid, or the means of coercing payment do not enter into the definition.' '' Again, in *Melvin* v. *State,* 121 Cal. 16, 24 [53 Pac. 416, 419], the supreme court say: ''The term 'debt,' however, has a

much broader popular significance than the foregoing technical definition, and includes that which is due from one person to another, whether money, goods or services; that which one person is bound to pay to another, or to perform for his benefit; thing owed; obligation; liability.'' In *Trow v. Moody,* 27 Cal. App. 403, 405 [150 Pac. 77, 78], in a case involving the interpretation of section 710, Code of Civil Procedure, relating to execution upon moneys due a judgment debtor from a public corporation, the appellate court say: ''The statute permits the filing of such a transcript where 'money is owing to the judgment debtor.' The ordinary rule as applicable to garnishment applies, which is that a garnishment will impound a debt even though the time of payment has not arrived. (Drake on Attachment, sec. 355; Waples on Attachment & Garnishment, p. 264; 2 Shinn on Attachment, sec. 480.)''

[3] The respondent contends in support of the judgment that the proceeds of the policy were not subject to garnishment because at the time of the levy the insured had not filed his proofs of loss. It is true, as stated by the respondent, that the insurance policy specifically provided that no action could be maintained by the insured against the insurer until after proofs of loss had been filed. It is also true that the policy provided that the loss should be payable in thirty days after the amount had been ascertained ''either by agreement or by appraisement but if such ascertainment is not had or made within sixty days after the receipt by the company of the preliminary proof of loss, then the loss shall be payable in ninety days after such receipt.'' The general rule as to the application of attachment process to moneys so held is found in 12 Ruling Case Law, section 33, page 804, where it is said: ''It may be said to be the general rule that the right which the insured possesses against an insurance company under a policy of insurance on property is subject to garnishment at the suit of creditors of the insured. But it is clear that the creditors of the insured cannot compel payment of the policy by process of garnishment against the insurance company, if the insured himself has forfeited the right to enforce collection by violating conditions contained in the policy. The fact that in order to be entitled to the proceeds of a policy the debtor must perform certain conditions precedent, as furnishing proofs of loss,

does not preclude garnishment, but the creditor may make proofs if the insured fails to do so. Nor does the fact that the loss has not been adjusted prevent garnishment.'' The reason for the rule is well stated in *Girard Fire and Marine Ins. Co.* v. *Field, Merritt & Co.*, 45 Pa. St. 129, 132 et seq., where the court say: ''There is a close affinity between the root and the branches of the remedy by attachment. In the former, as in the latter, unliquidated damages in tort are not within it, nor a claim for damages arising from a mere breach of contract; but I think what was said in *Fisher* v. *Consequa*, 2 W. C. C. 382, in defining the foundation of the process, very well defines also to what it may be applied; that is, to 'a demand arising *ex contractu*, the amount of which was ascertained, or which was susceptible of ascertainment by some standard referable to the contract itself, sufficiently certain to enable the plaintiff by affidavit to aver, or a jury to find it, might be the foundation of a proceeding by way of foreign attachment, without reference to the form of action, or the technical definition of debt, the expression used in the law.' True, this was said in regard to the nature of the claim on which foreign attachment may issue, and we held the same thing in *Carlin* v. *Bierne et al.*, 1 Wright, 288, but the process is evidently founded upon, and operates on, what must be regarded as demands, although not technically debts. Where the matter to be levied on is a chose in action, we think no greater certainty is required, or a more definite standard for its ascertainment is necessary, than that upon which it is founded. Applying that test to a claim like the present, the amount due could be averred on oath, if necessary, and on proof of loss, the amount could be ascertained by reference to the policy stipulating for the amount to be paid in the contingency which has happened. It is true, the value of the property may have to be ascertained, but this is not a serious difficulty, for there exists a standard for property in every community, viz., its market value. It is quite as easy to prove what one hundred bushels of wheat are worth which have been lost by fire, as what they would have been worth if sold, and the price claimed on a *quantum valebat*. The value per bushel being proved, the ascertainment of the amount would be easy. It would depend on calculation only. . . . No one would doubt, on the other hand, but that on a valued policy, after a loss, the amount

might be attached. The fact of loss would be the only fact to be established. Like a debt payable on demand, there is but one preliminary to be proved if the instrument be admitted, namely, the demand; and in the former, the agreement to pay, and the time and manner are also fixed, and the only thing to be proved is the extent of the loss—the value of the property destroyed; for this, as already said, the value of such property in the market, is a standard sufficiently certain to enable a jury to ascertain it. I cannot allow myself to doubt but that insurance money, after a fire, is strictly personal estate, and is certainly within the term 'effects,' and as such the law gives a remedy to the insured to reduce it to possession." See, also, *Knox* v. *Protection Ins. Co.,* 9 Conn. 430 [25 Am. Dec. 33]; *Sexton* v. *Phoenix Insurance Co.,* 132 N. C. 1 [43 S. E. 479]; *Northwestern Ins. Co.* v. *Atkins,* 3 Bush (Ky.), 328 [96 Am. Dec. 239]; *Chipman* v. *Carroll,* 53 Kan. 163 [25 L. R. A. 305, 35 Pac. 1109], and *Finch* v. *Great American Ins. Co.,* 101 Conn. 332 [125 Atl. 628].

Respondents cite *Early* v. *Redwood City,* 57 Cal. 193, *Redondo Beach Co.* v. *Brewer et al.,* 101 Cal. 322 [35 Pac. 896], and *Hassie* v. *G. I. W. U. Congregation,* 35 Cal. 378, and *Aigeltinger Co.* v. *Healy-Tibbitts Co.,* 23 Cal. App. 608 [139 Pac. 436, 438], all to the effect that moneys were not subject to garnishment which were not due at the time of the levy or upon which the judgment debtor could not have sued the garnishee in assumpsit. The first three cases cited do not hold more than that there must be a debt due and owing the judgment debtor at the time of the attachment, a rule which is strictly in accord with the provisions of the code which we have cited. In the Aigeltinger case the appellate court went beyond the rule of these cases and added that in addition to a debt being due "the right to sue at the date of attachment is the true test." In denying a petition to transfer this case to the supreme court the latter court based its denial upon the ground that the case, being within the appellate jurisdiction of the former court, the supreme court was bound by the facts stated in that opinion. It was then said (by the supreme court): "On those facts, it appears that there was, at the date of the garnishment, no debt, matured or unmatured, due the plaintiff. This being so, there was clearly nothing subject to attachment. We do not ex-

press any opinion on the correctness of the broader declaration of the District Court of Appeal that there must be, at the date of the garnishment, a present right of action; in other words, that a debt which is due, but not yet payable, may not be attached.''

The respondent has not directed our attention to any authority in this state, other than the appellate court decision in the Aigeltinger case, which holds that the right to sue at the date of the attachment is the true test, and our own search of the authorities satisfies us that the general rule is that the term ''debts,'' as used in attachment statutes, applies to either a matured or unmatured debt and that the present right to sue is not essential. In this connection we quote from 28 Corpus Juris, page 129, section 171: ''But generally debts contracted, although not presently payable or matured, but which will certainly become payable in the future, may be reached. And this, although the terminology of the statute is that claims or debts 'due' may be garnished, the term 'due' being taken in its larger sense as importing merely an existing obligation, without reference to the time of payment.'' (*Neblett* v. *Barron* (Tex. Civ. App.), 160 S. W. 1167, 1170, states the general rule as follows: ''The term 'due' does not necessarily mean that the debt is immediately payable. In commercial law it is often used as synonymous with 'owing,' and includes all debts, whether payable *in praesenti* or *in futuro,* and it is in this latter sense, we think, it is used in the statute under consideration. In other words, in such cases the wages not only 'accrue,' within the meaning of the statute— for the purpose of securing the lien—at the end of the week, but are also then due and payable, regardless of an agreement to the contrary.''

Upon the specific question of the application of the attachment statutes to insurance moneys after a loss and before adjustment we refer to Drake on Attachment, 7th edition, page 493, section 549, from which we quote: ''But where under a contract of indemnity a loss has occurred, and the party indemnified has a claim for such loss against him who engaged to indemnify him, the latter may be charged as his garnishee in respect of such loss, if the contract furnish a standard by which the amount of the liability may be ascertained and fixed. Thus, an insurance company

may be so charged on account of a loss accruing under a policy of insurance issued by it; for the liability to the insured clearly exists, and the policy furnishes the required standard. This has been held, not only as to adjusted claims for loss, but also as to such claims unadjusted.''

The portion of the judgment appealed from is reversed.

Sturtevant, J., and Langdon, P. J., concurred.