[L. A. No. 17016. In Bank.—December 20, 1940.]

DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS ANGELES et al., Plaintiffs, v. INYO CHEMICAL COMPANY (a Corporation) et al., Defendants; E. R. YOUNG, Respondent; STATE OF CALIFORNIA, Intervenor and Appellant.

Earl Warren, Attorney-General, and Burdette J. Daniels and John O. Palstine, Deputies Attorney-General, for Appellant.

E. L. Searle for Respondent.

Catlin & Catlin, William E. Woodrooff, O'Melveny & Myers, O'Melveny, Tuller & Myers and Jackson W. Chance, as *Amici Curiae,* on Behalf of Respondent.

THE COURT.— ■   This cause is before us upon appeal by the State of California, from a judgment entered after the demurrer of the defendant and respondent to the complaint in intervention of said state had been sustained without leave to amend. Therefore, for the purpose of this appeal the facts must be taken to be as declared in said complaint in intervention, wherein the following declarations form the basis of the alleged cause of action of the state herein.

For several years prior to and during the month of November, 1926, the defendant, Inyo Chemical Company, a corporation, operated a manufacturing plant near the southerly end of Owens Lake, in Inyo County, California, in which it produced calcined trona and a refined soda ash from lands leased from the State of California. The City of Los Angeles and Department of Water and Power of the City of Los Angeles maintained and operated the so-called Los Angeles Aqueduct along a course which passed a short distance westerly of said plant. On or about November 27, 1936, a break occurred in said aqueduct near said plant and the waters from said aqueduct washed through and over a portion of said premises so leased by said Inyo Chemical Company, and damaged and destroyed large quantities of dry trona and of the trona deposit, and caused damage to certain roads, pipe lines and power lines of said company, and also subjected said company to additional costs of operation during the time certain repairs were made.

On or about November 25, 1927, said Inyo Chemical Company filed an action in the Superior Court of Fresno County against said City of Los Angeles and against the Board of Water and Power Commissioners of the City of Los Angeles, and said Department of Water and Power of the City of Los

Angeles to recover for said damages sustained by reason of said break in said aqueduct, upon the ground that said defendants in said action were negligent in the maintenance, care and operation of said aqueduct.

Thereafter said action was tried, and on or about March 9, 1931, the court found that the defendants were negligent in the construction of said aqueduct and in the maintenance, care and operation thereof, and that by reason of the negligence and carelessness of the defendants, and their failure to exercise due or proper care in the construction, maintenance and operation of said aqueduct, plaintiff was damaged in the sum of $236,251.96, which the court found was directly and proximately caused by the negligence and carelessness of the defendants. Said court thereupon made its conclusions of law that the plaintiff was entitled to judgment against defendants in said amount, and judgment was entered accordingly.

Thereafter an appeal was taken from said judgment by the defendants, and the District Court of Appeal of the Fourth Appellate District rendered its decision affirming the determination of the trial court that the damages sustained by the Inyo Chemical Company were caused by the negligence of defendants, but reversing the judgment of the trial court and remanding the cause for a new trial solely upon the issue of the amount of damages, with instructions to the trial court to render judgment in favor of the Inyo Chemical Company for the amount of damages so found upon a determination of that issue.

Subsequently a hearing was granted by this court, which on February 29, 1936, rendered its decision approving the findings and conclusions of the trial court on the issue of negligence and consequent liability of the defendants. However, with respect to the amount of damages, this court affirmed the determination of the trial court as to the item of $53,551.96 for damages to structures and for increased operating expenses pending repairs, except that, in line with the concession of plaintiff and respondent therein, said item was reduced by the sum of $8,702.94, which had been duplicated in arriving at said figure of $53,551.96. So the trial court was ordered to enter judgment accordingly for $44,-849.02. As to the remaining item—damage to the 90,000 tons of mineral deposit—this court affirmed the finding of

the trial court as to the fact of its destruction. Yet because this court did not approve of the computation of loss of profit running over a period of 36 years, it reversed the judgment of the trial court for the sole purpose of determining the "present value" of the sum found by the trial court as the profit which would have been realized from the sale of the destroyed trona, and directed said trial court to enter judgment upon such determination. Said decision became final on March 29, 1936.

Meanwhile, on or about April 21, 1932, the intervenor herein, State of California, had secured a judgment in the Superior Court of Inyo County against the Inyo Chemical Company in the amount of $17,722.15, plus $7 costs. Pursuant to the terms of section 710 of the Code of Civil Procedure, on or about March 31, 1936, said State of California paid to the controller of the City of Los Angeles the sum of $1, and filed therewith with said controller an abstract of the aforesaid judgment in its favor and against said Inyo Chemical Company, together with an affidavit stating that the whole of said judgment, together with interest thereon, was owing and unpaid.

Then on October 8, 1937, pursuant to the stipulation of the parties in the action for damages to the leasehold interest of said Inyo Chemical Company, judgment was entered in the Superior Court of Fresno county in favor of said plaintiff company and against the City of Los Angeles and the Department of Water and Power of the City of Los Angeles in the sum of $90,000, without costs to either party.

Immediately thereafter on the same day, said Department of Water and Power and said city filed a complaint in interpleader in the Superior Court of Los Angeles County, by which application was made to the court for its determination of the rights of the respective claimants to said moneys owing to said Inyo Chemical Company. The State of California filed its complaint in intervention in said proceeding, setting forth the foregoing facts and further alleging that said city and said Department of Water and Power had not paid any of the moneys owing to said Inyo Chemical Company, and praying that the court determine that the state, by its levy, had obtained a first and paramount lien thereon and right thereto, and that the court order the controller of said city to pay same to the state to the extent of the afore-

said levy by the state under section 710 of the Code of Civil Procedure. One of the other claimants to said moneys, named also as a defendant in said complaint in intervention, demurred to said complaint, and his demurrer was sustained without leave to amend. This appeal is from the judgment accordingly entered in favor of said defendant and against the State of California.

There are two issues presented for our consideration: First, the question when, for the purpose of a levy under section 710 of the Code of Civil Procedure, may it be said that there are moneys "owing and unpaid" by the municipality; and second, the question whether said section 710 is applicable to cities operating under a Freeholders' Charter in so far as the moneys sought to be levied upon as "owing and unpaid" are owing on account of the exercise by said city of one of its municipal affairs.

Appellant contends that there was "money due and owing" to the Inyo Chemical Company within the meaning of section 710 of the Code of Civil Procedure, which provides a special form of garnishment for the benefit of any person who holds a judgment against a defendant *"to whom money is owing and unpaid"* by the public bodies therein enumerated. The pertinent part of that section relevant to that question reads as follows:

"Whenever a judgment for the payment of money is rendered by any court of this State against a defendant to whom money is owing and unpaid by . . . any city or municipality . . . , the judgment creditor may file a duly authenticated abstract or transcript of such judgment together with an affidavit stating the exact amount then due, owing and unpaid thereon and that he desires to avail himself of the provisions of this section . . . :"

Appellant concedes that unless there was a definite sum owing and unpaid by the municipality to the judgment debtor, there can be nothing upon which levy can be made. Respondent contends that the directions contained in the opinion of this Court rendered on the appeal in the case of *Inyo Chemical Co.* v. *City of Los Angeles,* 5 Cal. (2d) 525 [55 Pac. (2d) 850], require that a final judgment be entered by the trial court for a complete determination and liquidation of the amount of money due and owing from the City of Los Angeles

to the Inyo Chemical Company. The conclusion of said opinion reads as follows:

"The findings and conclusions of the court below on all issues, including all items of damage found, are approved in all respects except as follows: (1) the amount shall be reduced in the sum of $8,702.94, in accordance with the concession of plaintiff; and (2) the damage to plaintiff's leasehold shall be computed by determining the present value of the sum found by the court below as the profit which would have been realized from the sale of the destroyed trona, in accordance with the views hereinbefore expressed.

"The judgment is reversed for the sole purpose of determining this sum, and the trial court is directed to enter judgment for the plaintiff upon such determination, each party to pay its own costs on appeal."

It is respondent's argument that because such judgment had not been entered and had not yet become final when the levy under section 710 of the Code of Civil Procedure was made by the State of California, there was no sum of money due and owing from the City of Los Angeles, and such levy was ineffectual for any purpose. But this contention is without merit and is not supported by the facts. By the decision of this court in said case of *Inyo Chemical Co.* v. *City of Los Angeles,* both the existence of liability and the amount thereof to the extent of $44,849.02 were fixed and determined beyond the possibility of further dispute. In 2 Freeman on Judgments, fifth edition, page 1345, section 639, it is said:

"The judgments of appellate courts are as conclusive as those of any other court. They not only establish the facts, but also settle the law, so that the law as decided upon any appeal must be applied in the subsequent stages of the cause, and they are *res adjudicata* in other cases as to every matter adjudicated."

The cases of *Pacific Gas & Elec. Co.* v. *Nakano,* 12 Cal. (2d) 711 [87 Pac. (2d) 700, 121 A. L. R. 417], and *Arp* v. *Blake,* 63 Cal. App. 362 [218 Pac. 773], are strongly relied upon by respondent and *amici curiae* to support their contention that a final judgment is necessary to liquidate a tort liability. But in both these cases the court was considering the nature of a tort judgment "pending" an appeal therefrom, and consequently it was held therein that claims for damages in tort are not subject to garnishment while the

very *existence* of any liability remains open to dispute and *no amount* of liability has been liquidated. Both these cases stand merely for the proposition that as a prerequisite for garnishment, the tort claim should be reduced to a fixed sum.

■ It is the *fact* of liquidation of the uncertain claim, and not the *manner* of liquidation which is the decisive factor in determining whether the liability is subject to garnishment. The case of *Brainard* v. *Rogers,* 74 Cal. App. 247 [239 Pac. 1095], is particularly pertinent here. In that case the question of whether or not the proceeds of a fire insurance policy were subject to garnishment at the instance of the creditor of the insured subsequent to a fire loss but prior to an adjustment of that loss between the insurer and the insured was decided in the affirmative. The court declared the rule to be that where *liability* already exists and the policy furnishes the required standard by which the *amount* of the liability can be ascertained and fixed, then such liability is a debt "owing" to the insured within the meaning of the attachment sections of the Code of Civil Procedure (i. e., secs. 542–545). The fact that that case arose under a contract rather than in tort does not affect its applicability in so far as the question of *when a liability is liquidated* is concerned.

■ Let us here consider the significance of the wording of section 710 of the Code of Civil Procedure providing a special form of levy of execution for the benefit of any person who holds a judgment against a defendant "to whom money is owing and unpaid". Certainly there is nothing in the clear and unequivocal language of this garnishment provision to indicate its application should be limited to contractual obligations, or that it applies to tort liability of the city only if such liability has been fixed by final judgment. Rather it seems to us that the correct interpretation of said section 710 is that money is "owing and unpaid" within the meaning thereof if there is an *existing and unsatisfied legal liability,* without regard to whether such liability arises in tort or in contract, and without regard to whether such liability is fixed and established by *final* judgment or by some other means.

■ By the decision of this court in *Inyo Chemical Co.* v. *City of Los Angeles* both the existence of liability of the City of Los Angeles as tort feasor and the amount of that liability to

the extent of at least $44,849.02 were fixed beyond further dispute. Furthermore, this court stated the specific rules to be followed in awarding the additional amount of damages as directed in its said opinion. This determination has become final and is the law of this case, and certainly it cannot be denied that its effect is to ''liquidate'' the liability of said tort feasor, at least to the amount so fixed. In light of this reasoning, it seems to us that to say that there was no money ''owing and unpaid'' within the meaning of the terms of section 710 of the Code of Civil Procedure, is a mere play upon words. While it is held in the case of *Cowdery* v. *London & San Francisco Bank,* 139 Cal. 298 [73 Pac. 196, 96 Am. St. Rep. 115], cited by respondent and *amici curiae,* that when a judgment is reversed on appeal, said judgment is no longer of any validity, this general statement should be qualified when considered in connection with the unusually definite wording contained in the above-quoted portion of the opinion of this court, which in effect is a ''reversal'' with directions to enter the particular judgment therein outlined, rather than a reversal with orders for a new trial.

It is at this point that we disagree with the major premise of respondent and *amici curiae* that a tort claim cannot be liquidated except by reduction to final judgment, and that since at the time of the levy involved here, the judgment had been ''reversed,'' so that there was no final judgment, there was no money ''owing and unpaid'' from the City of Los Angeles to the Inyo Chemical Company within the meaning of the terms of said section 710.

At the time the levy was made by the State of California, said Inyo Chemical Company had a *liquidated* claim against the City of Los Angeles in an amount far in excess of the amount for which the levy was made by the State of California, in so far as such ''liquidation'' might be required by the provisions of said section 710 of the Code of Civil Procedure. Here again the case of *Brainard* v. *Rogers, supra,* is important in that it demonstrates clearly that the existence or nature of any means of coercing payment is immaterial in connection with the question of whether there is an *existing liability* which is subject to garnishment. If the obligation has become fixed and certain in any *other* manner than by way of a final judgment, the money is, nevertheless, ''owing and unpaid'' irrespective of the fact that a judgment has not yet

been obtained as a means of enforcing the liquidated liability. The only added effect of such final judgment by the trial court would be to make available to the Inyo Chemical Company certain statutory means of coercing payment of the liability as liquidated.

• In light of the foregoing discussion it appears to us that at the time of the levy of the State of California, there was money "owing and unpaid" by the City of Los Angeles to the Inyo Chemical Company, the judgment debtor of the state, within the meaning of section 710 of the Code of Civil Procedure.

This brings us to a consideration of the other issue involved on this appeal, i.e., the applicability of said section 710 of the Code of Civil Procedure to charter cities.

The City of Los Angeles has taken advantage of the privilege of legislative autonomy extended by the provisions of sections 6 and 8 of article XI of the California Constitution. However, appellant takes the position that the provisions of section 710 of the Code of Civil Procedure apply to the City of Los Angeles *despite* the fact that it has so taken advantage of said sections of the Constitution and exempted itself from all state legislative control of its municipal affairs.

Of course, it is recognized that since the City of Los Angeles is a charter city, it is not subject to or controlled by any enactment of the state legislature as to its purely municipal affairs. So, for example, the hiring of employees generally by the city to perform labor and services in connection with its municipal affairs and the payment of salaries to such employees as compensation for said services are not subject to or controlled by general laws. (*Storke* v. *City of Santa Barbara,* 76 Cal. App. 40 [244 Pac. 158].) ■ But the money which the state claims to have reached by its levy was and is "owed" on account of the city's liability for its negligent action, which is recognized to be a matter of general state concern. It is undisputed that the matter of the liability of and payment by a city for its tort is *not* a municipal affair. (*Douglass* v. *City of Los Angeles,* 5 Cal. (2d) 123, 128 [53 Pac. (2d) 353].)

■ Though it is true that the payment of funds of a municipal corporation is a municipal affair because it affects its fiscal policy and management, this does not mean that a state statute concerning a matter of general state concern is not ap-

plicable to a charter city. The controlling feature here is the *manner* in which the state statute affects the municipal affair. If the state statute affects a municipal affair only incidentally in the accomplishment of a proper objective of statewide concern, then the state law applies even as to "autonomous" charter cities. (*City of Pasadena* v. *Charleville*, 215 Cal. 384 [10 Pac. (2d) 745].)

█ Section 710 of the Code of Civil Procedure is a statute dealing with the subject of the enforcement of civil judgments by levy upon persons "owing money" to the judgment debtor, and as such it is a statute which clearly relates to a matter of statewide concern as distinguished from a purely municipal affair. Therefore, said section applies as against the City of Los Angeles and its Department of Water and Power notwithstanding the application of said section would incidentally affect the fiscal policy and management of said charter city. Certainly it would be an anomalous situation if a city could, by adopting a Freeholders' Charter, exclude itself from the operation of a general law of the state relative to the payment of obligations for damages caused by the negligence of the city, on the theory that such city is independent of general laws in municipal affairs.

█ By virtue of the levy made under section 710 of the Code of Civil Procedure, it is not to be assumed that the city owes money directly to the state. Rather it is merely a demand as authorized by the statute, for the payment in court, of moneys owing by the city to the judgment debtor of the person making the demand. The person to whom the money is "owing and unpaid"—i. e., the Inyo Chemical Company—is the one who must have complied with the provisions of the city charter in perfecting its demand as against the city; and it must be presumed that said Inyo Chemical Company did so comply in order to have stated a cause of action in the first instance against the City of Los Angeles. █ But the provisions of the city charter relating to proof and presentment of claims manifestly would not apply to persons making levies as authorized by the state statute (sec. 710, Code Civ. Proc.).

In conclusion, then, it is our opinion that section 710 of the Code of Civil Procedure applies as against the City of Los Angeles, and that at the time the State of California made its levy against said city there was money "owing and

unpaid'' by said city to the Inyo Chemical Company, judgment debtor of the state, at least to the extent of $44,849.02, which was more than twice the amount of the state execution—approximately $22,000. Said section 710 by its authorization of a levy when there is ''money owing and unpaid,'' only requires a fixed liability in a fixed amount. The liability of the City of Los Angeles was liquidated at least to the aforesaid extent, when the decision of this court determining that liability in said amount existed became final and so constituted the law of the case. The levy of the state was subsequent to this point of finality and hence reached the moneys determined to be ''owing and unpaid'' by the city to the judgment debtor of the state.

Judgment reversed, with directions to the trial court to overrule said demurrer and to permit the demurring defendant to answer, if he so elect.

Rehearing denied. Gibson, C. J., Shenk, J., and Edmonds, J., voted for a rehearing.