[Civ. No. 49707. Second Dist., Div. Five. Nov. 15, 1977.]

DARRELL C. BOWERS, Plaintiff and Respondent, v.
CITY OF SAN BUENAVENTURA, Defendant and Appellant.

**68**

COUNSEL

Donald S. Greenberg, City Attorney, and David T. Romney, Deputy City Attorney, for Defendant and Appellant.

Ghitterman, Schweitzer & Herreras and Allan S. Ghitterman for Plaintiff and Respondent.

OPINION

ASHBY, J.—Defendant and appellant City of San Buenaventura (hereinafter City) appeals from a judgment granting a peremptory writ of mandate to compel City to pay salary and to follow certain personnel procedures on account of temporary military leave for plaintiff and respondent Darrell Bowers, a police officer and employee of City.

Plaintiff is a member of the National Guard. He took temporary military leave of absence from his employment as a police officer in order to serve National Guard duty for seven days in 1973, nineteen days in 1974, six days in 1975, and five days in 1976.

Military and Veterans Code sections 395[1] and 395.01[2] provide that a public employee shall be entitled to temporary military leave of absence for certain National Guard duty and "shall be entitled to receive his salary or compensation as such public employee for the first 30 calendar days of any such absence."

---

[1]Military and Veterans Code section 395, as amended in 1970, provides in part: "Any public employee who is a member of the reserve corps of the armed forces of the United States or of the National Guard or the Naval Militia shall be entitled to a temporary military leave of absence while engaged in military duty ordered for purposes of active military training, encampment, naval cruises, special exercises or like activity as such member, providing that the period of ordered duty does not exceed 180 calendar days, including time involved in going to and returning from such duty, and provided that military leave of absence is not authorized for periods of inactive military duty."

[2]Military and Veterans Code section 395.01 provides: "Any public employee who is on temporary military leave of absence and who has been in the service of the public agency from which the leave is taken for a period of not less than one year immediately prior to the day on which the absence begins shall be entitled to receive his salary or compensation as such public employee for the first 30 calendar days of any such absence. Pay for such purposes shall not exceed 30 days in any one fiscal year. For the purposes of this section, in determining the one year of public agency service, all service of said public employee in the recognized military service shall be counted as public agency service."

Contending that these statutes are inapplicable to it, City follows certain personnel and salary practices with regard to temporary military leave which are not consistent with the statutes. The trial court found the statutes applicable and ordered City to revise its procedures and pay compensation to plaintiff in accordance with its interpretation.

City's practice has been that the employee should serve his military duty on his own time if his work schedule can be adjusted; that when the employee must take temporary military leave on days he would have been scheduled to work, he should not receive "double" pay, that is, both his regular pay from City and his pay from the military, and that therefore the employee must turn over to the City his military pay check in order to collect his regular salary; and, that if the employee wishes to keep both checks, he must "make up" the days lost. Plaintiff Bowers was on military leave for a total of 37 regularly scheduled work days between 1973 and 1976. He was paid his regular salary, without turning over his military pay, for 29 of these days because he made them up by working on days that otherwise would have been days off. He was not paid for the other eight days because he would not make them up or relinquish his military pay to City.

The trial court found City's practices to be inconsistent with section 395.01. It ordered City (1) to allow plaintiff to keep all military pay; (2) to refrain from shifting plaintiff's regularly scheduled working hours to reduce the time spent on temporary military leave; (3) to pay plaintiff up to 30 days' salary per year for days he is scheduled to work at the same time military duty is ordered; and (4) to pay plaintiff at overtime rates for all time worked over the regularly scheduled work days. The amount due was calculated at $3,072.52.

On appeal City's main contention is that section 395.01 does not apply to City, and that therefore City is free to follow its own policy with respect to compensation of its employees who are on temporary military leave. City is a chartered city and contends (1) that the Legislature did not intend section 395.01 to apply to chartered cities and (2) that section 395.01 cannot constitutionally be applied to chartered cities because compensation of city employees is exclusively a municipal affair within the meaning of article XI, section 5 of the California Constitution. (See *Bishop* v. *City of San Jose,* 1 Cal.3d 56, 62-63 [81 Cal.Rptr. 465, 460 P.2d 137].) These contentions are without merit.

City then argues that if section 395.01 is applicable it is unconstitutional on other grounds. This contention likewise lacks merit.

Finally City contends that assuming section 395.01 is applicable, the trial court erroneously interpreted the statute. This contention is partially correct.

### APPLICABILITY AND CONSTITUTIONALITY OF SECTION 395.01

■ City's contention that the Legislature could not constitutionally apply section 395.01 to chartered cities because it involves an exclusively municipal affair is clearly without merit. Unlike the statutes in the cases cited by City,[3] the purpose of sections 395 and 395.01 is not to regulate the compensation of municipal employees *as such.* Their main purpose is to provide for national defense and civil calamity (see Mil. & Vet. Code, §§ 128, 146) by encouraging public employees to join the military reserve organizations so as to be ready for call in times of emergency. (21 Assem. Interim Com. Rep. No. 8 Ways and Means (1963) p. 86, 2 Appendix to Assem. J. (1963 Reg. Sess.).)[4]

Military and Veterans Code section 395.1 provides reemployment rights to returning veterans. That section has long been held to reflect a matter of statewide concern which overrides the charters of chartered cities. (*Cunningham* v. *Hart,* 80 Cal.App.2d 902, 908-910 [183 P.2d 75]; *Palaske* v. *City of Long Beach,* 93 Cal.App.2d 120, 125 [208 P.2d 764]; *Murdy* v. *City of Los Angeles,* 201 Cal.App.2d 468, 471 [20 Cal.Rptr. 69].)

City argues a distinction should be drawn between compelling cities to grant temporary military leave and reemployment rights, versus compelling them to grant temporary military leave *with pay.* City argues that even if the former is a legitimate matter of statewide concern, the latter is not. But the Legislature could reasonably conclude that unless the employee received temporary military leave with pay, the statewide

---

[3]*Bishop* v. *City of San Jose, supra; Popper* v. *Broderick,* 123 Cal. 456 [56 P. 53]; *Milliken* v. *Meyers,* 25 Cal.App. 510 [144 P. 321].

[4]As stated in an opinion of the California Attorney General, ". . . While the employment and compensation of city employees is a municipal affair [citation], the design of section 395 is not to control employment or compensation as such. Its purpose is to encourage public employees to become members of the National Guard and other reserve components of the defense establishment, to maintain their training therein, and to grant them leave for the performance of military service with pay during a portion of that leave [citation]." (17 Ops.Cal.Atty.Gen. 110, 111 (1951).)

purpose of encouraging public employees to participate in military training could not be achieved. (See 21 Assem. Interim Com. Rep. No. 8, *supra* at pp. 87-88.) We conclude that section 395.01 can constitutionally be applied to chartered cities.

Alternatively, City argues that as a matter of legislative intent section 395.01 does not apply to chartered cities. The applicability of section 395.01 is determined by Military and Veterans Code section 389, subdivisions (b) and (c), which, with the exception of state civil service employees (see Gov. Code, § 19770 et seq.), defines " 'Public employee' " as any officer or employee of a public agency, and " 'Public agency' " as "the state, or any county, city and county, *city,* municipal corporation, school district, irrigation district, water district, or other district." (Italics added.) Obviously, City literally fits the definition, which includes cities. City cites a number of different statutes in the Government Code in which the Legislature expressly made clear whether it meant the term "city" to include both a general law city and a chartered city. Thus, in an appropriate case, it might be determined as a matter of legislative intent that the term "city" was not intended to apply to chartered cities. (*Ector* v. *City of Torrance,* 10 Cal.3d 129, 132-133 [109 Cal.Rptr. 849, 514 P.2d 433].) We do not believe this is such a case, however. *Ector* involved a state statute prohibiting cities from prescribing a residence requirement for city employees. It dealt, as such, with the qualifications of an employee. The court concluded that the Legislature did not intend the prohibition to apply to chartered cities. As pointed out above, however, the purpose of section 395.01 is not to regulate compensation as such. Its effect upon employee compensation is incidental to the general statewide purpose of encouraging membership in the military reserve organizations. (See *Dept. of Water & Power* v. *Inyo Chem. Co.,* 16 Cal.2d 744, 753-754 [108 P.2d 410].) If the granting of military leave with pay is essential to achieve this purpose, it is not reasonable to assume that the Legislature intended to exclude from the scope of the statute the many employees of chartered cities.

City points out that the state does not compel *private employers* to grant military leave *with pay.* (Mil. & Vet. Code, § 394.5.) City's argument that this constitutes denial of equal protection of the laws is clearly without merit, since the state can reasonably treat public and private employers differently. We do not find persuasive City's argument that, since the Legislature does not compel private employers to grant leave with pay, it did not intend to compel chartered cities to do so. The fact that the Legislature dealt separately, although similarly, with state

civil service employees (Gov. Code, § 19770 et seq.) is likewise unpersuasive that it intended to exclude chartered cities from regulation.

City next argues that by requiring City to pay plaintiff while he is on temporary military leave the state compels City to expend money which does not benefit City's citizens, in effect requiring City to make a "gift" of public funds for a nonmunicipal purpose.[5] This argument is not persuasive. It is not correct to say that City gains no benefit from this provision, since its existence may be helpful to recruitment and employee morale, and military training may improve plaintiff's performance on the job. (21 Assem. Interim Com. Rep. No. 8, *supra* at pp. 87-88.) That the state requires local public agencies to engage in programs which benefit the entire citizenry of the state, and that this incidentally requires local expenditures, does not establish that the state is thereby compelling a "gift" of local public agency funds. (See *Dept. of Water & Power* v. *Inyo Chem. Co., supra,* 16 Cal.2d 744, 753-754.) City's argument that it would be more fair for the state to subsidize such activities directly, rather than to compel local public agencies to do so, should be addressed to the Legislature.

## INTERPRETATION OF SECTION 395.01

Having found section 395.01 to be fully applicable to City, we now turn to City's various arguments that the trial court misinterpreted the statute.

We agree with the trial court that there is no basis in law for City's policy of requiring an employee to turn over to the City his military pay check as a condition of receiving the pay to which he is entitled under section 395.01. That section does not authorize such a deduction on the theory asserted by City.[6]

The next main issue concerns the power of City to adjust plaintiff's work schedule so that his military duty would fall on his "days off." It appears that the controversy over rescheduling plaintiff's work days was based on the assumption that plaintiff was entitled to paid military leave for weekend drills. Because plaintiff is a police officer who

---

[5] City cites *Conlin* v. *Board of Supervisors,* 114 Cal. 404, 409-410 [46 P. 279]; *Milliken* v. *Meyers, supra,* 25 Cal.App. 510, 515; and *Golden Gate Bridge etc. Dist.* v. *Luehring,* 4 Cal.App.3d 204, 207 [84 Cal.Rptr. 291]; Cal. Const., art. XVI, § 6.)

[6] A similar conclusion has been reached by the Attorney General. (53 Ops.Cal.Atty. Gen. 84 (1970).)

is sometimes regularly scheduled to work on weekends, there was an occasional conflict between his work schedule and military duty, which would not arise in the case of an employee with a regular Monday to Friday shift. City contended it could simply change plaintiff's shift in those weeks so that he would have the weekend off and serve military duty on his own time. The trial court prohibited City from doing so.

In this respect the trial court erred. The 1970 amendments to section 395 show the Legislature's intent that public employees must use their own time to attend such weekend drills.

In 1951, section 389, subdivision (a), defined " 'temporary military leave of absence' " as a leave of absence "to engage in ordered military duty for a period which by the order is not to exceed 180 calendar days including travel time for purposes of *military training, drills, encampment,* naval cruises, special exercises or like activity as a member of the reserve corps or force of the armed forces of the United States, or the National Guard, or the Naval Militia." (Stats. 1951, ch. 1561, § 1, p. 3555; italics added.) Section 395 also originally referred to *"military training, drills, encampment,* naval cruises, special exercises or like activity . . . ." (Stats. 1951, ch. 1561, § 9, p. 3558; italics added.)

In March 1970 the Attorney General rendered an opinion pointing out that "the normal procedure for members of the reserve forces of the United States and the California National Guard requires attendance at weekly or monthly training sessions in addition to an annual training period of two weeks held usually during the summer months," and holding that section 395.01 applied to weekend drills as well as two-week summer camps. (53 Ops.Cal.Atty.Gen. 84, 86.)[7]

Thereafter the 1970 Legislature amended section 395 to read: "Any public employee who is a member of the reserve corps of the armed forces of the United States or of the National Guard or the Naval Militia shall be entitled to a temporary military leave of absence while engaged in military duty ordered for purposes of *active military training, encampment,* naval cruises, special exercises or like activity as such member, providing that the period of ordered duty does not exceed 180 calendar days, including time involved in going to and returning from

---

[7] The Attorney General also said, however, "The public agency employer may desire to adjust the employee's work days so as to not conflict with the weekend days upon which he is ordered to training duty. Nothing in the above discussed statutes would prohibit such an adjustment." (53 Ops.Cal.Atty.Gen. 84, 86 (1970), *supra.*)

such duty, *and provided that military leave of absence is not authorized for periods of inactive military duty.*" (Stats. 1970, ch. 467, § 1, p. 926; italics added.) In other words, the Legislature deleted the word "drills," inserted the word "active" before "military training" and specifically provided that military leave of absence is not authorized for "inactive" military duty.

In 1971 the Legislature enacted separate provisions for state civil service employees. (Gov. Code, § 19770 et seq.) Government Code section 19774 specifically provides: "Employee members of reserve military units and the National Guard required to attend scheduled reserve drill periods shall use their own free time, overtime, or vacation time to fulfill such reserve obligations. If such reserve obligations fall on the employee's regular work shift, the appointing power shall make every attempt to change the employee's schedule to avoid the necessity of using vacation time or overtime, provided five working days notice is received from the employee."

In 1973 Military and Veterans Code section 389, subdivision (a), was amended to conform to the 1970 amendment to section 395.

The legislation enacted after the Attorney General's 1970 opinion compels the conclusion that the Legislature intended to eliminate weekend drills from the scope of section 395.01. Although Government Code section 19774 is applicable only to state civil service employees, it is consistent with the 1970 amendment to Military and Veterans Code section 395, which deleted "drills" and limited authorized temporary military leave to "active military training." Government Code section 19774 makes clear that such weekend duty is to be on the employee's own time, and that if the employee cannot arrange for the employer to adjust his working shift, the employee must take vacation or overtime to meet his reserve obligations. In light of the 1970 amendments to Military and Veterans Code section 395, it would be unreasonable to assume the Legislature intended to compel local public agencies to pay employees for weekend military drills when the state did not do so for its own employees.

Thus plaintiff was not entitled to paid military leave for weekend drills even when such drills fell on his regularly scheduled work days. If *he* could not *arrange* for City to adjust his work schedule so that weekend drills would fall on his own time, he was required to use up "vacation time" or "overtime." (See Gov. Code, § 19774.) Far from being

prohibited, adjustments in plaintiff's work schedule were authorized for his benefit. If conflict between the two schedules could not be avoided, plaintiff had to use vacation leave or make up the lost days in order to receive compensation. If plaintiff chose to make them up, City was not required to pay him at overtime rates on make-up days. (See *Los Angeles Fire & Police Protective League* v. *City of Los Angeles,* 23 Cal.App.3d 67, 76-77 [99 Cal.Rptr. 908].)

City erroneously argues, however, that the same reasoning applies to so-called summer camp, the 15 consecutive days' training required each year. (See Mil. & Vet. Code, § 368.) The 1970 amendment to section 395 refers to "active military training" including "encampment, naval cruises, special exercises or like activity . . . ." Although the Legislature eliminated drills from the scope of that section, it did not eliminate more extensive training activity such as camp.

Thus, plaintiff was entitled to paid military leave for duty such as camp. He was not required to make up such days in order to receive his compensation. If he in fact did make up such days and worked more than his normal hours in any particular week in the process of doing so, he would be entitled to overtime pay pursuant to City's normal overtime rules.

Neither the record nor the trial court's findings adequately reflect these distinctions or the amount to which plaintiff would be entitled pursuant to the standards set forth here.

The matter is reversed and remanded to the trial court for further proceedings consistent with the views expressed in this opinion. The parties to pay their own costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied December 8, 1977, and appellant's petition for a hearing by the Supreme Court was denied January 13, 1978.