CLARENCE I. FINCH *vs*. GREAT AMERICAN INSURANCE COMPANY ET ALS.

Third Judicial District, New Haven, June Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

A "debt is due" within the meaning of that language as employed in § 5915 of the General Statutes relating to foreign attachments, when it is "owed," even though it is not yet "payable."

A debt is due from a fire insurance company to its assured upon the occurrence of a loss by fire, and is immediately subject to foreign attachment by a creditor of the assured, although the conditions precedent to payment under the policy, such as the filing of proofs of loss or the ascertainment of the exact amount of damages, have not yet been fulfilled; and if these conditions are later performed in strict compliance with the terms of the policy, so that a definite

sum is payable to the assured, an attaching creditor, whose claim has been reduced to judgment, may maintain an action in the nature of *scire facias* against the insurance company.

Argued June 5th—decided July 28th, 1924.

ACTION in the nature of *scire facias* against several garnishees, brought to and tried by the Superior Court in Fairfield County, *Maltbie, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff.   *Error; judgment to be entered for plaintiff.*

Plaintiff brought an action in the Superior Court in Fairfield County against one Maybelle G. Ryerson, claiming foreclosure of a mechanic's lien upon a tract of land with a dwelling-house and barn thereon.   While the action was pending and undetermined, the house and barn were destroyed by fire, and upon plaintiff's motion, a supplemental order of attachment was issued directing the sheriff of the County of Fairfield, his deputy, or either constable of the town of Darien to attach to the value of $7,000 the goods or estate of the defendant Ryerson.   In pursuance of that order, the defendants in this *scire facias* were duly served with copies of the original writ and complaint, and of the order of attachment, as debtors of the defendant Ryerson.

Plaintiff obtained a decree of foreclosure and a deficiency judgment for $5,106.67 against Mrs. Ryerson, upon which execution was issued and returned unsatisfied, and after demand made upon and payment refused by the garnishees, this action of *scire facias* was instituted.

At the time of the fire, the house in question was insured under standard policies of fire insurance with the defendants as follows: with the Great American Insurance Company in the sum of $3,100; with the Sun Insurance Company in the sum of $2,000, and with the National Insurance Company in the sum of $900.   Each of these policies was in full force and effect

at the time of the fire.    The fire occurred on June 5th, 1921, and caused a total loss of $6,000, and the garnishee process was duly served on each of the three defendants in this *scire facias* on June 8th, 1921.    At the date of such service, 'no proofs of loss had been filed by the insured, but such proofs were filed on August 2d, 1921, within the time limited by the policies.

Each of the policies contains the usual provisions requiring the insured, if fire occurs, to give immediate notice in writing of any loss thereby, and within sixty days after the fire, unless such time is extended in writing by the company, to file proofs of loss, signed and sworn to by the insured, containing specified items of information.    It is further provided that "the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company."    Also that "no suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements."

At the time the house was destroyed by fire, the premises on which it stood were subject to two mortgages, a first mortgage of $2,000, and a second mortgage of $1,500.    The accrued interest on the first mortgage at date of judgment, amounted to $322.13, and on the second mortgage, to $285.    The policies carried riders making the loss, if any, payable to the mortgagees as their interest might appear.    The first mortgage on the property was paid by the defendants in full, and the defendants took an assignment thereof to themselves.

So far as appears from the record, the only controverted issue litigated and determined—except, perhaps, that the policies were in full force and effect at the time of the fire—was whether there was a "debt due"

from the respective defendants to the insured at the date when the garnishee process was served, to wit, after the loss and before the proofs of loss were filed. On this issue, the trial court ruled and decided that the filing of proofs of loss under the fire insurance policies was a condition precedent to the defendants' obligation to pay under them, and until such proofs of loss were filed, there was no existing debt which could be reached by garnishee process; and that, as the proofs of loss were not filed until after the defendants herein were factorized, the plaintiff could not recover. The reasons of appeal attack these conclusions of the trial court as erroneous.

*Nehemiah Candee* and *John T. Dwyer,* for the appellant (plaintiff).

*Edward J. Quinlan,* for the appellees (defendants).

BEACH, J. The only question before us is whether, under the standard form of fire insurance policy, "a debt is due" from the underwriter to the insured, within the meaning of our foreign attachment statute, § 5915 of the General Statutes, after a loss by fire covered by the policy, and before proofs of loss are filed. It is not surprising that there should be a conflict of authority among the several States as to the validity of a garnishment made under such circumstances, because of the wide differences of statutory policy respecting attachments in general. See 28 Corpus Juris, p. 165, § 207.

Our own liberal policy with regard to the use of attachments, has naturally led this court to construe the word "due," in our foreign attachment statute, in the sense of "owing," rather than in the more restricted sense of "payable"; and of the many decisions

to this effect we are of opinion that *Knox* v. *Protection Ins. Co.*, 9 Conn. 430, virtually controls the case at bar. In that action of *scire facias*, the declaration alleged that, at the time of the service of the garnishment process, the garnishee was indebted to the defendant in the original suit, "by a policy of fire insurance, a loss having accrued by fire, claimed to exceed the amount of the policy, before the leaving of said copy with said company; but said claim was not agreed to by said company and remains unadjusted." The cause was reserved for the advice of this court upon a demurrer to the declaration; and one of the questions arising on the demurrer was whether an unadjusted claim for a loss covered by the policy was a debt subject to garnishment. On that point, CHIEF JUSTICE DAGGETT said: "Is the indebtedness of the defendants such as to authorize this proceeding by way of foreign attachment? That they *owed*, when the copy was left with them, to the absent debtor, in a certain sense, or that they were *liable* to pay him for a loss which they had insured against, is not denied; but it is insisted, that this liability does not render them responsible in this suit. . . . Our statute declares, 'that whenever the goods or effects of an absent or absconding debtor are concealed in the hands of his attorney, agent, factor or trustee, so that they cannot be found or come at, to be attached; or where debts are due from any person to an absent or absconding debtor, it shall be lawful,' etc. It would be an extremely narrow construction of these words to limit them to *liquidated* debts. The object of the statute is to secure for the benefit of the creditor, *all* the property of the debtor—all his goods, effects and credits. The defendants owe the absent debtor for a loss; they do not adjust it; but say they will not be responsible for it to his creditors. They are liable to pay him money;

and they will pay only when the damages are liquidated. It can be recovered in the same form of action, *viz: assumpsit.* Had the damages been ascertained, there could have been no difficulty; but in that case, there would have been only *indebtedness.* Had the absent debtor sent them goods to sell, or debts to collect, and had they converted them into money, still the account might have remained unsettled, and they have been liable in an action of *assumpsit* or account. This objection, therefore, cannot prevail."

The *Knox* case has been often cited in support of the rule, now firmly established, that a debt is "due" when it is owed, though not yet payable because not yet liquidated in amount. *New Haven Steam Saw Mill Co.* v. *Fowler,* 28 Conn. 103, 108; *Woodruff* v. *Bacon,* 35 Conn. 97, 105; *Ransom* v. *Bidwell,* 89 Conn. 137, 140, 93 Atl. 134. See also *Goodman* v. *Meriden Britannia Co.,* 50 Conn. 139; *Seymour* v. *Over-River School District,* 53 Conn. 502, 3 Atl. 552. Although it does not clearly appear from the report of the *Knox* case why the loss had not been liquidated when the garnishee was served with process, the opinion assumes that the insured had done all that the policy required him to do, and that the loss was capable of liquidation. So in the case at bar, it is expressly found that the insured has done all that the policy required her to do, and that the loss has been liquidated and is now payable. The *Knox* case establishes the crucial proposition that the obligation to pay such a loss dates from the loss, and not from the subsequent liquidation which determines the amount payable. We have no doubt that the *Knox* case was rightly decided. A policy of fire insurance is an agreement to indemnify the insured against loss by fire to the property insured. Before any loss, and while the policy remains in force, the liability of the underwriter is contingent. When, as here, the

Conn.

policy is in force at the time of a loss by fire, which is covered by the policy, the contingent liability of the underwriter is thereby converted into a present contract obligation to pay whatever sum, not exceeding the amount of the policy, will in fact indemnify the insured, payment being necessarily deferred until the amount of the loss is ascertained.

In the standard form of fire insurance policy, the required process of liquidating the loss is minutely specified with reference to protecting the company against excessive or fraudulent claims; and the filing of proofs of loss by the insured is one step in that process. A failure to do so within the time limited may bar the enforcement of the underwriter's obligation, because it is so agreed in the policy; but the obligation itself is manifestly created by the promise to pay in case of a loss by fire, and by the happening of that contingency. The steps which the insured is required by the policy to take before he can collect or sue for the loss, relate to matters the performance of which is exclusively within the volition of the insured. In effect, he is required to furnish a bill of particulars in support of his claim. This is not with a view to creating a debt; on the contrary, the filing of proof of loss necessarily involves the assertion by the insured of the existence of an antecedent debt. So the provisions of the policy requiring the filing of proofs of loss, tacitly assume the existence of an obligation to indemnify. The whole procedure after the loss, is for the purpose of finding out whether the claimed obligation to indemnify has arisen, and, if so, to ascertain its amount.

The agreement that the loss shall not become payable until sixty days after the insured has performed his part in the process of investigation and liquidation, is in form and in substance entirely consistent with the existence of an obligation to pay the loss so in process

of investigation and liquidation. By virtue of that agreement, a default by the insured will prevent the loss from becoming payable, and so it may be said that compliance with the requirements referred to is a condition precedent to the right to payment and, therefore, to an enforceable liability to pay. *Harris v. Phœnix Ins. Co.*, 35 Conn. 310. In that case, it appears that the loss never became payable, because of the failure of the insured to comply with one of the requirements exacted by the underwriter and assented to by the insured, within the allotted time; and for that reason, a garnishment made after the loss was held invalid, on the ground that the factorizing creditor could not put himself in any better position by the garnishment than that occupied by the debtor himself. That is not this case. Here it is found that the insured has complied with all the requirements of the policies, and the result of the investigation, in the course of which she was required to file proofs of loss, is that a loss of $6,000, covered by the policy, did in fact occur on June 5th, 1921, several days before the garnishment, which loss became payable in accordance with the terms of the policy, before this action in the nature of *scire facias* was commenced. Thus the plaintiff stands squarely in the shoes of the insured, and the liability to pay being admitted, the only question before us is whether the obligation to indemnify, which is now sought to be enforced, came into existence at the date of the loss. This is the question which was decided in the affirmative in the *Knox* case, and on principle and authority, we hold that the debt now adjusted and payable was "due" at and from the date of the loss. The following cases hold directly that an unadjusted and unliquidated claim for a loss under a policy of insurance against fire is subject to garnishment in the hands of the in-

surance company: *Girard Fire & Marine Ins. Co.* v. *Field, Merritt & Co.,* 45 Pa. St. 129; *Sexton* v. *Phœnix Ins. Co.,* 132 N. Car. 1, 43 S. E. 479; *Crescent Ins. Co.* v. *Moore & Co.,* 63 Miss. 419; *Glens Falls Ins. Co.* v. *Hite,* 83 Ill. App. 549. See also Waples on Attachment, § 374; Drake on Attachment (5th Ed.) § 549; 28 Corpus Juris, p. 164.

In *Northwestern Ins. Co.* v. *Atkins,* 66 Ky. (3 Bush) 328, and *Phenix Ins. Co.* v. *Willis & Bro.,* 70 Tex. 12, 6 S. W. 825, the precise point that the filing of proofs of loss was a condition precedent to the creation of the debt, was made and overruled.

It appears from the finding that the interest of the mortgagees has been made to appear, and as the apportionment of the loss among the several defendants is a matter of arithmetic, the case is, as the trial court notes in its memorandum, ready for judgment in case the plaintiff should prevail.

There is error, the judgment is set aside and the cause remanded with direction to enter judgment for, the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.