Argued March 1; reversed and remanded November 19, 1929;
motion to recall mandate denied February 4, 1930

# FIREMAN'S FUND INSURANCE CO. v.
# WALKER ET AL.

(282 P. 230)

*G. M. Roberts* of Medford for appellant.

*Gus Newbury* of Medford for respondents Walker, Farmers' & Fruitgrowers' Bank, and Newbury.

*Chas. W. Reames* of Medford for respondent plaintiff.

*O. C. Boggs* and *J. F. Fliegal,* both of Medford, for respondents B. F. Goodrich Rubber Co., Roesch, and Otter Mfg. Co.

*E. E. Kelly* of Medford pro se.

*G. M. Roberts* of Medford for respondent Edwin F. Merry Co.

BELT, J. Plaintiff brings this suit in the nature of an interpleader to have the rights of the creditors of the defendant A. W. Walker adjudicated and determined. Walker was engaged in the automobile business in Medford, Oregon. On February 11, 1921, nineteen second-hand automobiles, covered by standard insurance policies issued by plaintiff, were destroyed by fire. Walker, on April 7, 1921, made proofs of loss, but these were rejected by the insurance company as unsatisfactory and returned to the insured with certain specific objections thereto. On June 20, 1921, other proofs of loss were submitted and these were accepted. The insurance company having denied liability, Walker commenced action to recover upon the policies. Judgment

was finally obtained against the insurance company on June 11, 1925. On June 18, 1925, Walker assigned this judgment to the defendant, Farmers and Fruitgrowers Bank, in part payment of money borrowed from the bank to carry on his automobile business. Prior to the assignment of the judgment, Frank C. Bramwell, who was then superintendent of banks of Oregon and who had charge of the liquidation of the Bank of Jacksonville, obtained judgment against the defendant Walker on account of money loaned to him by such bank. A writ of garnishment was served on the insurance company on April 22, 1921. On May 2, 1921, the insurance company answered to the writ admitting the execution of the policies, but refused either to admit or deny liability to the assured.

It will thus be seen that the contest over the money deposited by the plaintiff with the clerk of the court is between the assignee of the judgment and an attaching creditor. Other creditors, made defendants, asserted their rights subsequent to the service of garnishment and the assignment of the judgment. The claims of these defendants give us no concern.

The Farmers and Fruitgrowers Bank asserts that the service of garnishment on the insurance company, even though prior to the assignment of the judgment, has no force or effect for the reason that it was made before satisfactory proofs of loss were made by Walker and before time had elapsed in which the insurer had the right under the policy to "repair, replace or rebuild the property."

The superintendent of banks, aside from the question of priority of the alleged attachment lien, claims that on April 29, 1921, in Medford, Oregon, at the law office of Attorney G. M. Roberts, an oral agreement

to avoid litigation was had between Bramwell, as representative of the Bank of Jacksonville, and Mr. Getchell, president of the Farmers and Fruitgrowers Bank, whereby the latter bank was to receive 48/98ths and the Bank of Jacksonville 50/98ths of the funds deposited by the insurance company. Appellant also alleges that the Farmers and Fruitgrowers Bank, through its officers and representatives, so recognized and acted upon the agreement in reference to division of funds that the bank should be estopped from asserting to the contrary.

The trial court upheld the assignment of the judgment and found that there was no agreement relative to division of the proceeds of the policies. The defendant superintendent of banks of the state of Oregon appeals.

Aside from the question of any agreement concerning the division of funds, the legal problem presented is whether the proceeds of a standard insurance policy are subject to garnishment after loss by fire but prior to an adjustment of such loss between the insurer and the insured. The authorities are not in accord on this question. The variance of opinion, however, may to some extent be explained by the different statutory provisions relative to attachment proceedings. What is a garnishable debt is determined by statute. It is important, therefore, that cases be read in the light of the statute under consideration.

■ Considering the various statutory provisions of this state relative to attachment proceedings, we think it is clear that a debt need not be due before it is garnishable. The word "due" is not to be viewed in the narrow sense of "payable." Section 234, Or. L., provides:

"* * * but if such debt be not then due, the sheriff shall sell the same according to the certificate, as other property."

Section 303, Or. L., provides that the garnishee shall furnish to the sheriff making the attachment, "a certificate * * * designating * * * any property in his possession belonging to the defendant, or any debt owing to the defendant." We take it that the word "property" is broad enough to include "goods, effects and credits." The above section was amended by chapter 85, General Laws of Oregon for 1921, by inserting after the words "belonging to the defendant" the words "any debt due, or to become due to the defendant." This amendment was not in effect at the time of service of the writ on the insurer, but, even so, the statute prior to amendment included claims not matured as well as those matured. Our statute is unlike that of Minnesota (*Smaltz Goodwin Co. v. Poppe, Inc., Resp., Rhode Island Ins. Co., Garnishee,* 172 Minn. 43, 214 N. W. 762, 53 A. L. R. 722) or Maine (*Davis v. Davis,* 49 Me. 282) which restricts garnishment to claims absolutely due and without depending on a contingency. Also note wording of Michigan statute: "due or to become due absolutely and without depending on any contingency." (*Martz v. Detroit Fire & Marine Ins. Co.,* 28 Mich. 201.)

■■ In determining whether the proceeds of these insurance policies were subject to garnishment it is not an infallible test that the insured must have been able at such time to have maintained an action on the policies: *Graf v. Wilson,* 62 Or. 476 (125 P. 1005, Ann. Cas. 1914C 462); *Brainard v. Rogers,* 74 Cal. App. 247 (239 P. 1095); 28 C. J. 45, 95.

In *Graf v. Wilson,* supra, the plaintiff garnished Multnomah county for money due Wilson on a labor claim. The claim at such time had not been presented to the county to be audited. It was urged that this was a condition precedent to recovery. The court recognized

that such rule would be applicable in an action between Wilson and Multnomah county, but refused to apply it as against an attaching creditor. It was there said:

"There are circumstances under which the garnishee will be liable, though the defendant could not immediately recover of him: (1) Under some statutes, when a debt is not yet due; (2) when notice on the part of the defendant is a prerequisite to recovery.

"1. Where the defendant has property or funds in the possession or under the control of, or owing from, a county, under such circumstances that he can not institute an action therefor without previous notice or demand, such property or funds, if otherwise liable to be subjected to garnishment, can not be exempt for want of such preliminary action on the part of the defendant; for, if so, he might foil the thrust of the creditor by purposely avoiding the giving of the notice or the making of the demand.

"2. The general rule is that the creditor has no greater rights against the garnishee than the defendant had before the writ was served; that he steps into the shoes of the defendant and prosecutes for him in order that the credit or property of the latter may be subjected to the payment of such judgment as may be obtained against him. Here is a reasonable exception to the rule, so manifestly just that the opposite course, as is clearly seen, would defeat the ends of justice."

It is clear that money due absolutely in the future could not be recovered in an action between debtor and creditor before such claim had matured, but certainly such debt would be garnishable even though at time of service of writ the money was not payable.

In the instant case it does not seem just nor reasonable that the rights of an attaching creditor should hinge upon whether Walker made satisfactory proofs of loss. When the fire occurred, a prima facie obligation arose to indemnify the assured against loss. The making of the proofs of loss did not create the debt.

In fact such proof was submitted on the assumption of pre-existing indebtedness. The assured had a property right in the policies which was not contingent within the meaning of the statute and which was subject to garnishment. As said in *Finch v. Great American Ins. Co.,* 101 Conn. 332 (125 Atl. 628, 38 A. L. R. 1068), involving a similar statutory provision:

"Before any loss, and while the policy remains in force, the liability of the underwriter is contingent. When, as here, the policy is in force at the time of a loss by fire which is covered by the policy, the contingent liability of the underwriter is thereby converted into a present contract obligation to pay whatever sum, not exceeding the amount of the policy, will in fact indemnify the insured; payment being necessarily deferred until the amount of the loss is ascertained.

"In the standard form of fire insurance policy, the required process of liquidating the loss is minutely specified, with reference to protecting the company against excessive or fraudulent claims; and the filing of proofs of loss by the insured is one step in that process. A failure to do so within the time limited may bar the enforcement of the underwriter's obligation, because it is so agreed in the policy; but the obligation itself is manifestly created by the promise to pay in case of a loss by fire and by the happening of that contingency. The steps which the insured is required by the policy to take, before he can collect or sue for the loss, relate to matters the performance of which is exclusively within the volition of the insured. In effect, he is required to furnish a bill of particulars in support of his claim. This is not with a view to creating a debt; on the contrary, the filing of proof of loss necessarily involves the assertion by the insured of the existence of an antecedent debt. So the provisions of the policy requiring the filing of proofs of loss tacitly assume the existence of an obligation to indemnify. The whole procedure after the loss is for the purpose of finding out whether the claimed obligation to indemnify has arisen, and, if so, to ascertain its amount."

In *Phenix Ins. Co. v. Willis,* 70 Tex. 12 (6 S. W. 825, 8 Am. St. Rep. 566), it was said:

"But we are of opinion that the issuance of a writ of garnishment is not, strictly speaking, an action for the recovery of a debt, but is more in the nature of a bill of discovery, and may be filed in anticipation that a debt or other obligation will mature at some future time. This practice is evidently contemplated by our statute of garnishment. In this instance, the property having been destroyed by fire, the agreement to pay the policy was no longer contingent, but had become absolute by the happening of the event mentioned in the policy, subject to be defeated, however, by defenses pleaded and proven, as might be done in other cases of debt. Consequently the garnishment was not prematurely issued."

That the amount due under the policies after loss by fire, but prior to proof of loss, is garnishable, see: *Brainard v. Rogers,* supra; *Ackerman v. Tobin,* (C. C. A.) 22 F. (2d) 541; *Sexton v. Phoenix Ins. Co.,* 132 N. C. 1 (43 S. E. 479); *Gordon et al. v. Litwood Oil & Supply Co.,* (Tex.) 261 S. W. 400; *Phenix Ins. Co. v. Willis,* supra; *Northwestern Ins. Co. v. Atkins,* 66 Ky. 328; *Girard Fire & Marine Ins. Co. v. Field Merritt & Co.,* 45 Pa. 129; Drake on Attachment (7th Ed.), § 549; Beach's Law of Insurance, vol. 2, p. 747; Bancroft's Code Practice and Remedies, vol. 3, § 2645.

While the authorities are conflicting (28 C. J. 164) the better rule is as expressed in those above cited. It is believed that the conclusion reached that the claim of the insured is subject to garnishment is in keeping with the reasoning of this court in *Graf v. Wilson,* supra.

■ But it is urged that the insurance company had the option "to repair, replace, or rebuild the property damaged" and that service of the writ was made prior

to the time in which the insurer could have exercised this right. This provision of the policy has, under any theory, no application, in view of the nature of the property involved. It will be recalled that second-hand automobiles were destroyed. How could the insurer replace such property? (28 C. J. 165.)

Since the state superintendent of banks has alleged an agreement for division of the funds as above stated, it will be so ordered, notwithstanding such agreement is denied by the Farmers and Fruitgrowers Bank.

The decree of the circuit court is reversed and the cause remanded to proceed not inconsistent with this opinion. Neither party will recover costs or disbursements.

CoSHOW, C. J., and BEAN, J., concur.

BROWN, J., did not participate in the decision.

---

Motion to recall mandate denied February 4, 1930

ON MOTION TO RECALL MANDATE

BELT, J. ■ The appellant superintendent of banks moves to recall the mandate issued herein and to modify the same so as to allow interest on amount decreed to be due from Farmers and Fruitgrowers Bank at the rate of 6 per cent per annum from January 31, 1928, the time when such amount was paid by the county clerk to the bank.

The mandate is in keeping with the decree. If appellant was not satisfied with the decree, a petition for rehearing would have been in order. The motion to recall mandate was not filed until after expiration of time to file petition for rehearing. It can not be used as a substitute for such petition. Furthermore, there is much equity in the position of the bank relative to the matter of interest.

Motion is denied.