[No. 182-40917-2.    Division Two.    November 9, 1970.]

ALEX MAHOMET et al., Plaintiffs, v. HARTFORD INSURANCE COMPANY et al., Defendants, CONNELLY ACCEPTANCE CORPORATION et al., Appellants, RAY HAYES, JR., Respondent.

*Peter V. Gulick*, for appellant Connelly Acceptance Corporation.

*William J. Powers* and *Whitmore, Powers, Manion & Ishikawa,* for appellant Gannon.

*Conrad, Kane & Vandeberg, Elvin J. Vandeberg,* and *Harold T. Hartinger,* for appellant Dorsey.

*John E. Murray* and *Ray Hayes,* for respondent Hayes.

ARMSTRONG, C. J.—This case involves the adjudication of the rights and priorities of Hannah Cagley's creditors to insurance proceeds which were generated when Hannah Cagley's furniture business was destroyed by fire. W. J. Gannon and Connelly Acceptance Corporation appeal from the trial court judgment holding that their writs of garnishment against three fire insurance companies did not create a lien on the insurance proceeds. Fred C. Dorsey, the trustee in bankruptcy for Cagley, appeals from that portion of the trial court judgment which granted Ray Hayes, Jr., a former attorney for Hannah Cagley, an attorney's lien on the proceeds for services rendered to Cagley prior to the fire.

The fire which destroyed Cagley's furniture business at Lacey, Washington started this creditors' dispute, which has lasted 5 years and ranged over many counties. The fire occurred on August 19, 1965 at which time Hannah Cagley's business, known as Twin City Furniture, was insured against fire loss with three insurance companies. At the time of the fire the business was not in a sound financial position and the creditors were concerned about the disposition of the proceeds.

After the fire Hannah Cagley gave notice and filed proofs of loss with the insurance companies. The policies gave the companies 30 days from the time of receipt of the proofs of loss to elect to replace the damaged or destroyed property. The option to replace the furniture was not exercised.

The insurance companies refused to pay the claim made upon them and on January 7, 1966 an action was instituted by Hannah Cagley to recover on the policies. The insurance companies answered by admitting that a fire had occurred, that the policies were in force, and that proofs of loss had

been filed. However, they denied any liability and listed six affirmative defenses, including arson, misrepresentation of material facts, and intentionally increasing the hazard of fire.

Both before and after the fire, numerous creditors had been making demands upon the business for prompt payment. By the time Cagley had commenced her action against the insurance companies, appellants W. J. Gannon (Gannon), and Connelly Acceptance Corporation (Connelly) as well as other creditors had reduced their claims to judgment. The judgment creditors caused writs of garnishment to be issued against one or more of the insurance companies. The insurance companies answered all but Connelly's writs of garnishment, in each instance denying that they were indebted to Cagley either at the time the writs were issued or at the time the writs were answered. Gannon did not controvert the insurer's answer denying indebtedness as required in RCW 7.32.250.[1] Connelly's writs were never answered by any of the insurance companies.

Shortly after Cagley commenced her action against the insurance companies, she assigned her interest in the insurance proceeds on February 15, 1966 to Apple Manufacturing Company and various other creditors. These assignments were made subsequent to the filing of the writs of garnishment by appellants.

In mid 1966 Cagley and the insurance companies finally reached a tentative settlement and on October 11, 1966 judgment for $36,000 was entered against the insurance companies. On that same day most of the creditors, including Gannon and Connelly, signed a stipulation whereby it was agreed that upon the payment of the $36,000 into the registry of the court, the insurance companies would be discharged of any further liability to the creditors. The

---

[1] RCW 7.32.250 which was in effect at the times in question provided: "If the plaintiff should not be satisfied with the answer of the garnishee he may controvert the same by affidavit in writing signed by him, stating that he has good reason to believe and does believe that the answer of the garnishee is incorrect, stating in what particulars he believes the same is incorrect."

proceeds, after a stipulated payment of about $9,000 to the firm of Peters and Tracy for attorney's fees, were to be held by the court until the respective priorities and rights of the various creditors were determined.

On November 30, 1966 an action was commenced by General Electric Credit Corporation (GECC), a loss-payee beneficiary of the policies, to determine the rights and priorities of the various creditors. Although designated a complaint in interpleader, the action was more in the nature of a declaratory judgment. On August 15, 1967 an order was issued by the trial court directing disbursal of $7,755.76 to GECC and dismissing it as a party. This order was agreed to by all of the remaining creditors. On November 29, 1967 trial commenced on the action initiated by GECC to determine the rights and priorities of the remaining creditors to the remaining proceeds. Judgment was entered on December 30, 1968. The trial court determined that the assignment of the proceeds made by Cagley to various creditors were to be paid in full. Also, Ray Hayes, Jr., the former attorney for Hannah Cagley, was allowed an attorney's lien on the proceeds for services rendered prior to and unrelated to the fire. There is no dispute as to Hayes' charging lien on the proceeds for services rendered after and related to the fire. The remaining assets were to be turned over to the trustee in bankruptcy, as the writs of garnishment were held to be inoperative.

The assignments of error present four issues:

(1) Are the proceeds of a fire insurance policy subject to garnishment by a creditor of the insured after the insured has filed a proof of loss and the time has expired for the company to replace the lost goods rather than pay the loss?

(2) Was the garnishing creditor Gannon's lien on the insurance proceeds extinguished when he failed to controvert the insurer's answer denying liability within 20 days?

(3) Did the creditors Gannon and Connelly waive and abandon their garnishment rights when they signed an agreement which released the garnishee insurance compa-

nies from further liability upon payment of the $36,000 settlement into court?

(4) Can an attorney's retaining lien for services unrelated to the fire attach to the fire insurance proceeds where the attorney included the value of his unrelated services in his charging lien and surrendered the fire insurance policies at the request of the insurers, after the attorney was replaced by other counsel?

Gannon and Connelly contend that the trial court erred in holding that Cagley's claim against the fire insurance companies was contingent and unliquidated and therefore not subject to garnishment. Our jurisdiction has not had the occasion to determine whether the proceeds of a fire insurance policy are subject to garnishment after the fire has occurred, the insured has filed a proof of loss and the time has expired for the company to replace the lost goods rather than pay the loss. There is a substantial disagreement in other states as to the right to garnish a fire insurance company before the insured's claim is adjusted. We favor the majority rule which recognizes the right of garnishment after the filing of a proof of loss but before adjustment of the claim.[2] We do not find it necessary to answer this question, however, because we find that the trial court was correct for other reasons contained in the findings of fact and conclusions of law.

The second issue concerns the question of whether Gannon lost his garnishment lien on the insurance proceeds when he failed to controvert the insured's answer denying liability within 20 days.

■ Since garnishment is a statutory remedy and there

---

[2]For authorities from other jurisdictions which support the right to garnish fire insurance proceeds after the filing of the proof of loss but before the claim has been adjusted see: 22 J. Appleman, Insurance Law and Practice § 14564 at 605 (1947); Annot. 38 A.L.R. 1072 (1925); *Security Bldg. & Loan Ass'n v. Ward,* 174 Okla. 238, 50 P.2d 651 (1935). Numerous cases hold that fire insurance funds may be garnished even before the proof of loss has been filed. *Brainard v. Rogers,* 74 Cal. App. 247, 239 P. 1095 (1925); *Fireman's Fund Ins. Co. v. Walker,* 132 Ore. 73, 282 P. 230 (1929); *Finch v. Great American Ins. Co.,* 101 Conn. 332, 125 A. 628, 38 A.L.R. 1068 (1924).

is no provision for it in common law, the statutory procedure must be strictly followed. *Portland Ass'n of Credit Men, Inc. v. Earley,* 42 Wn.2d 273, 254 P.2d 758 (1953); *Pacific Coast Paper Mills v. Pacific Mercantile Agency,* 165 Wash. 62, 4 P.2d 886 (1931).

■ Each answer to the writs of garnishment of the insurance companies stated "That said garnishee defendant is not now and was not at the time of the service of said writ of garnishment indebted to the above-named defendant [Cagley]". The fact that each insurer's answer further stated that it "is unable to answer what, if any, amount may become due under its policy" is irrelevant because the answer speaks only as of the date of the service of the writ or until the writ has been answered. *Bassett v. McCarty,* 3 Wn.2d 488, 101 P.2d 575 (1940).

■ Since the insurers denied that they were indebted to Cagley, it became the obligation of Gannon to controvert the insurers' answers if he wished to preserve the validity of his writs. RCW 7.32.250; RCW 7.32.270 (statutes now repealed). The statute in effect at the times in question did not specify the time within which to file a controverting affidavit. This oversight was corrected when a time limit of 20 days was imposed by the 1969 legislature in RCW 7.33.240.

The problem of the unspecified time limit for controversion of the answer of the garnishee was resolved in *Snyder v. Cox,* 1 Wn. App. 457, 462 P.2d 573 (1969). Applying CR 81(a) and CR 12, the court of appeals held that there was a similar time limit of 20 days required for a controversion of a garnishee's answer on cases arising prior to the present law, but after the creation of the court rules. Since Gannon did not controvert the garnishees' answers, his claim against the insurance companies was properly dismissed.

■ This analysis does not dispose of Connelly's claim against the insurers because the garnishees did not answer the Connelly writs of garnishment and therefore Connelly had nothing to controvert. Connelly's claim against the garnishee insurance companies fails because Connelly, as

well as the other appellant creditors, signed the stipulation of October 11, 1966 which provided for the payment into court of the $36,000 settlement of Cagley's claim against the garnishee insurance companies. The stipulation provided in part that the "insurance companies may upon paying said funds into the registry of the Clerk of the Superior Court, may be discharged from any further liability as far as the plaintiffs [Cagley] or interveners [creditors] listed below are concerned".

In strictly construing the garnishment statutes, we are forced to conclude that Connelly and the other creditors who signed the stipulation discharging the insurance companies from further liability effectively waived and abandoned their garnishment rights against the garnishee defendant insurance companies. The creditors had not obtained a default judgment against the insurance companies and they could not do so after they discharged the garnishee defendant companies from further liability.

■ Approximately 7 weeks after the dismissal of the insurance companies, a creditor started this action to determine its rights and the rights of creditors claiming the funds by reason of writs of garnishment. Gannon and Connelly contend that their stipulation and the court order should be treated as a substitute for an interpleader action provided for in RCW 4.08.160:

> Anyone having in his possession, or under his control, any property or money, or being indebted, where more than one person claims to be the owner of, entitled to, interested in, or to have a lien on, such property, money or indebtedness, or any part thereof, may commence an action in the superior court against all or any of such persons, and have their rights, claims, interest or liens adjudged, determined and adjusted in such action.

We do not agree. This was not an interpleader action because it was commenced by a creditor and not by one having the money in his possession or under his control.

Our last issue concerns whether the trial court was correct in allowing Ray Hayes, Jr. an attorney's lien against the insurance proceeds paid into the registry of the court

for legal services he performed for Hannah Cagley before the fire. The parties are in agreement that he was entitled to recover the value of his legal services in connection with the fire loss. An answer to our last issue may be found by analyzing the attorney's lien statute set forth in RCW 60.40.010:

> *An attorney has a lien for his compensation,* whether specially agreed upon or implied, as hereinafter provided: (1) *Upon the papers of his client, which have come into his possession in the course of his professional employment*; (2) upon money in his hands belonging to his client; (3) upon money in the hands of the adverse party in an action or proceeding, in which the attorney was employed, from the time of giving notice of the lien to that party; (4) upon a judgment to the extent of the value of any services performed by him in the action, or if the services were rendered under a special agreement, for the sum due under such agreement, from the time of filing notice of such lien or claim with the clerk of the court in which such judgment is entered, which notice must be filed with the papers in the action in which such judgment was rendered, and an entry made in the execution docket, showing name of claimant, amount claimed and date of filing notice.

(Italics ours.)

The applicable portion of this statute is subsection (1) which provided the attorney a general or retaining lien upon the insurance policies which came into his possession in the course of his professional employment.

■ The Washington Supreme Court has held that subsection (1) is a codification of the common law general or retaining lien. The insurance policies may be held for the general balance of compensation due, and not just to secure payment for services rendered in the particular case in which the papers were obtained. The common law provided no remedy for enforcement of a retaining lien and neither does the statute. Loss of possession of the insurance policies eliminates the retaining lien. The possession of the policies is effective only to "worry" the client into payment of the attorney fees. *Gottstein v. Harrington,* 25 Wash. 508,

65 P. 753 (1901). *See also Hudson v. Brown,* 179 Wash. 32, 35 P.2d 756 (1934).

In the case at bar Mr. Hayes was replaced by other counsel after he had been representing Hannah Cagley on the fire loss. In his lien claim he included services rendered before the fire in addition to the services rendered in seeking a settlement of the fire loss. He released the insurance policies upon request of the insurance company attorney so that settlement could be made. He did not use the policies for the harassment purposes the common law apparently contemplated. He could not be protected without obtaining a specific agreement to retain the lien or an assignment of the insurance proceeds from Cagley before he consented to the change in attorneys or before he released the policies.

The trial court obviously endeavored to reach an equitable answer to the inequitable dilemma of Mr. Hayes. We believe that the only real solution to the problem of furnishing an adequate method of enforcing the attorney's retaining lien lies in corrective legislation. *See* G. Stevens, *Our Inadequate Attorney's Lien Statutes—a Suggestion,* 31 Wash. L. Rev. 1 (1956).

We conclude that Mr. Hayes is entitled to lien priority for the services he rendered in connection with the fire loss; his rights were protected by the special or charging lien provisions of RCW 60.40.010(4). Mr. Hayes is not entitled to lien priority for the services rendered his client prior to the fire loss because an attorney's general or retaining lien is dependent upon possession and it was lost when he surrendered the policies without having obtained an agreement or assignment to protect his rights.

Judgment affirmed as modified.

PEARSON and PETRIE, JJ., concur.