[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM (#125)
On November 17, 1993, the plaintiff law firm filed this four count complaint against fifty defendants who are alleged to be the individual members of a condominium association, seeking payment of legal fees for services allegedly rendered by the plaintiff to the defendants.
Based on the pleadings and affidavits of the parties, it appears that the plaintiff was originally retained to represent the defendants in a derivative suit pursuant to General Statutes 47-245, brought by the defendants against the condominium developer in order to compel the developer to relinquish control of the CT Page 3508 condominium association. During the course of the representation, and at the suggestion of the plaintiff, the defendants paid to the plaintiff their respective common fees due to the condominium association, which the plaintiff then held in escrow for the benefit of the association. The purpose of the escrow was allegedly to prevent the developer from misappropriating the common fees to his own benefit and to protect the financial viability of the condominium association.
A dispute arose between the defendants and the plaintiff regarding the course of the representation and the amount of the plaintiff's fees. The individual defendants decided to retain alternative counsel. However, the plaintiff's fee for the services rendered to many of the defendants has not been paid.
On December 14, 1993, eighteen of the defendants answered, denying all the material allegations of the complaint, asserted various special defenses, and raised several counterclaims. Before the court at this time is a motion for summary judgment on the first counterclaim. The court notes that the answer, special defenses and counterclaims have been filed on behalf of eighteen defendants, not including the defendant Eric Chartier. The specific named defendants on whose behalf the first counterclaim has been filed are seventeen in number and do not include the defendant Chartier or the defendant Gary Pond. However, the motion for summary judgment which is before the court has been filed on behalf of the seventeen named on the first counterclaim plus Chartier and Pond. The court is proceeding on the assumption that all of the nineteen defendants named on the motion for summary judgment should have been included on the answer and first counterclaim. Counsel should correct the pleadings accordingly. In any event, since the motion seeks summary judgment only as to liability, the hearing in damages, which would be held if this motion is granted, can address the issue of which parties are properly included in the motion for summary judgment.
The motion for partial summary judgment seeks judgment as to liability only on the first counterclaim. That counterclaim alleges that the defendants paid to the plaintiff in escrow the common charges due to the condominium association, which the plaintiff held in escrow for the benefit of the association. The counterclaim alleges that the funds were not deposited as attorney's fees, but were to be held on behalf of the defendants. These defendants allege that they have made a proper demand for the return of the funds and the plaintiff has refused, causing the CT Page 3509 defendants damages.
The motion for partial summary judgment asserts that there is no genuine issue as to any material fact regarding the defendants' rights to the funds, because as a matter of law, the plaintiff has no right to retain the fund as security for payment of the attorney's fees. In support of the motion for summary judgment, the defendants have filed affidavits averring that they were represented by the plaintiff, that they paid their shares of the common fees to the plaintiff, and that, upon termination of the services of the plaintiff, the defendants have demanded but have not received return of the funds. In addition, the defendants filed as an exhibit a letter dated October 11, 1991 from the plaintiff to the defendants, sent during the course of the plaintiff's representation of the defendants, recommending that the defendants pay the common fees to the plaintiff to be held in escrow.
The plaintiff has submitted a memorandum in opposition to the motion for summary judgment and an affidavit averring the following: the plaintiff has not received payment for the services rendered to the defendants; the plaintiff claims a retaining lien on the funds held by the plaintiff; the money is still being held in escrow and has not been applied to outstanding attorney's fees; the plaintiff has offered to arbitrate the matter through the Bar Association fee arbitration process; the defendants tried to obtain a court order for the funds and files to be released from the Bridgeport Superior Court which was denied by Fuller, J.; one of the defendants who is an attorney has prosecuted a grievance against Attorney Bender but that no disciplinary action has been issued or has any hearing occurred, and a copy of the Investigation Committee report is attached; the plaintiff has attempted to comply with the suggestions of the Committee, and initiated this suit after being threatened by the defendant who is an attorney; the purpose of the deposit with the plaintiff was solely to deprive the developer of the use of the unit owners' money during the course of the litigation, and that it was contemplated that the money would be delivered back to the clients at some point or used to fund the nearly bankrupt Association; all the money is safe and segregated as required by the rules of ethics; and the sum of $43,429.44 currently is held in clients' funds for the moving defendants by the plaintiff.
Based on documents filed by both parties, it appears that the court order referred to in the plaintiff's affidavit was a motion CT Page 3510 filed by one of the moving defendants in this case in another case pending in the Superior Court, Judicial District of Fairfield. It also appears that the "Investigation Committee" referred to in the plaintiff's affidavit is in fact the Grievance Panel for the Judicial District of New Haven, G.A. 7 and 8, and that the Grievance Panel has determined "that probable cause exists for a finding of professional misconduct," by Attorney Ronald M. Bender in connection with his refusal to return the escrow, and pursuant to the General Statutes has forwarded the record to the Statewide Grievance Committee for its review and whatever other action it may deem appropriate. While the plaintiff is technically correct when it states that no disciplinary action has been issued or any hearing occurred, this statement hardly reflects the current status of the grievance proceeding.
 Practice Book 384 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts.
(Citations omitted; internal quotation marks omitted.) Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990).
Despite the extensive allegations in the plaintiff's affidavit, the basic issue on the motion for summary judgment is whether the plaintiff has a valid attorney's retaining lien on the funds in question.
 An attorney's retaining lien is a possessory lien on a client's papers and files that the CT Page 3511 attorney holds until his fee has been paid. 7 Am.Jur.2d, Attorneys at Law 315; 7A C.J.S., Attorney and Client 357, 358; comment, "Attorney's Liens: A Practical Overview," 6 U. Brpt. L. Rev. 77, 80 (1985). A retaining lien differs from a charging lien, which is a lien placed upon any money recovery or fund due the client at the conclusion of suit. 7 Am.Jur.2d, supra, 324. A retaining lien is a passive lien and the attorney is unable to enforce it at law or in equity. Hagearty v. Burns, 4 Conn. Sup. 505, aff'd sub nom. Hagearty v. Ryan, 123 Conn. 372, 195 A. 730 (1937); Midvale Motors, Inc. v. Saunders, 21 Utah 2d 181, 184, 442 P.2d 938 (1968); Mahomet v. Hartford Ins. Co., 3 Wash. App. 560, 567, 477 P.2d 191 (1970). A retaining lien affords only the right to retain possession until all proper charges are paid. There is no right of sale and the retaining lien's principal value is the leverage that the lien gives to the attorney over a client who refuses to pay for services rendered. Brauer v. Hotel Associates, Inc., 40 N.J. 415, 422, 192 A.2d 831 (1963).
Marsh, Day Calhoun v. Solomon, 204 Conn. 639, 643, 529 A.2d 702
(1987). The Connecticut supreme court has held that Connecticut recognizes a common law, self-executing attorney's retaining lien. Id., citing Gager v. Watson, 11 Conn. 168, 173 (1836).
As noted above, the issue raised by this motion is whether the common law retaining lien recognized in Connecticut applies to the client's monies held in escrow by the attorney. The court is unaware of any Connecticut case which has held that a retaining lien applies to monies of the client obtained and held by the attorney in the course of the representation.
Other jurisdictions, however, recognize that a common law retaining lien applies to the client's monies held by the attorney. The common law rule is that "[a]n attorney's rendition of services and expenditures of disbursements on behalf of a client entitles him to a common law retaining lien on any of the client's books, papers, money and securities which are in the attorney's possession." (Emphasis added.) Stevens v. Serlin, 509 N.Y.S.2d CT Page 3512 666, 667, 125 App.Div.2d 780 (N.Y.App.Div., 1986) citing People v. Keefe, 50 N.Y.2d 149, 155-56, 428 N.Y.S.2d 446, 405 N.E.2d 1012
(1980); Foor v. Hunington National Bank, 499 N.E.2d 1297, 1301,27 Ohio App.3d 76 (1986) (retaining lien attaches "to all property, papers, documents, and monies of the client coming into the attorney's hands during the course of his representation of the client"); Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561-62 (Fla. 1986) (common law retaining lien may apply to money); Greek Catholic Union of Russian Brotherhood v. Russin, 340 Pa. 295,17 A.2d 402 (1941) (same proposition); Ideal Tile Corp. v. N.T. Investment Co., 111 N.J. Eq. 241, 162 A. 111 (N.J. Ch. 1932) (same proposition); 7A C.J.S., Attorney Client, 358, p. 711; 7 Am.Jur.2d, Attorneys at Law, 317, p. 333 ("The general or retaining lien of an attorney is usually held to extend to moneys collected by him for his client in the course of his employment, whether on a judgment or not.").
The common law retaining lien, however, "does not attach to money or property that a client left with his attorney as trustee or for a special purpose." (Footnote omitted.) 7 Am.Jur.2d, supra, 318, p. 333; 7A C.J.S., supra, 377, p. 745; see also Marsano v. State Bank of Albany, 279 N.Y.S.2d 817, 27 App.Div.2d 411, appeal dismissed 247 N.E.2d 286, 23 N.Y.2d 1018, 299 N.Y.S.2d 458; Ideal Tile Corp. v. N.T. Investment Co., supra, 112 (client's money held in trust by attorney for benefit of client's creditors held for "a special purpose" and lien would not attach); Micheller v. Oberfrank, 378 A.2d 1162, 1164, 153 N.J. Super. 37 (App.Div. 1977) (client's money deposited with attorney in trust to be disbursed in accordance with client's instructions for settlement of pending judgment against client was held for "a special purpose" and retaining lien would not attach).
The defendants cite The Florida Bar v. Bratton, 413 So.2d 754
Fla. 1982), in support of the proposition that monies entrusted to an attorney for a specific purpose are not subject to a common law retaining lien. In Bratton, supra, the client's funds were entrusted to the attorney for the specific purpose of posting a bond in a foreclosure proceeding. The attorney refused to release the funds, claiming a retaining lien in the proceeds, and he was disciplined and suspended by the Florida bar. In upholding the suspension, the Florida Supreme Court held that:
 [a]n attorney must not allow his claim of a fee for past services rendered to conflict with his duty as a trustee when entrusted with CT Page 3513 money for a specific purpose of his client. This potential conflict is resolved by a general principle of law . . . that property delivered for a specific purpose is not subject to a retaining lien.
Id., citing 7 Am.Jur.2d, supra, 318.
The plaintiff argues that the common law rule for retaining liens does not apply in Florida, as it does in Connecticut; Marsh, Day Calhoun v. Solomon, supra, 643, citing Gager v. Watson, supra, 173; because a Florida bar rule (Integration Rule of the Florida Bar, article XI, Rule 11.09) governs retaining liens. However, Florida expressly recognizes the common law rule: "no statutes outline the requirements for valid attorney's liens in Florida. Rather, case law acts as the sole guide for both attorneys and courts as to [attorney's retaining and charging] liens." Daniel Mones, P.A. v. Smith, 486 So.2d 559, 561 (Fla. 1986) (allowing common law retaining lien in money judgment obtained by attorney for client in a matter different than the matter for which the attorney sought security for fees).
The effect of the special purpose exception to retaining liens is illustrated in the following case. In Mayeri Corp. v. Shea Gould, 447 N.Y.S.2d 413, 112 Misc.2d 734 (N.Y.Sup.Ct., 1982), a group of tenants were involved in a summary process proceeding against their landlord, which the respondent law firm represented. The landlord terminated that respondent's representation and, in a separate proceeding, sought to have its present counsel substituted as co-escrowee of a fund that had been set up to collect the rents of the tenants pending the summary process dispute. The escrow stated that no disbursements were to be made from the fund, except for withdrawals to pay for heating oil. The respondent claimed a retaining lien in the fund for the security of its fees incurred in the summary process action. The court held that "although the creation of the escrow was obviously closely related to the professional work being done by the respondent [regarding the summary process action], the funds were not delivered to them as attorney for their clients, but rather as co-escrowee." Id., 415. Therefore, the court held that, in the absence of an agreement to the contrary in the terms of the escrow, a retaining lien would not attach to the funds. Id.
Both the plaintiff and the defendants submit in support of their respective positions a letter from Attorney Ronald Bender on CT Page 3514 behalf of the plaintiff, dated October 11, 1991, sent to the defendants, recommending that the defendants pay the common fees to the plaintiff. The letter states:
 ". . ., I strongly recommend that effective immediately, directs that the condominium fee payments be paid monthly to Bender and Anderson, P.C. Trustee for Break-water Key Associates, Inc. . . .
 All monies will be held and no disbursements for any reason will be made until the election of the Board of Directors representing the majority of unit owners has taken place. . . .
(Emphasis in the original.) Regardless of whether Connecticut recognizes a common-law retaining lien in the monies of a client held by the attorney or not, the escrow at issue in the present case comes under the common law rule prohibiting a retaining lien in monies held by an attorney in trust for the client or for a specific purposes. 7 Am.Jur.2d, supra, 318, p. 333; 7A C.J.S., supra, 377, p. 745; see also The Florida Bar v. Bratton, supra; Marsano v. State Bank of Albany, supra; Mayeri Corp. v. Shea Gould, supra; Ideal Tile Corp. v. N.T. Investment Co., supra, 112; Micheller v. Oberfrank, supra.
The plaintiff also claims that there are factual disputes concerning the purpose of the escrow account and the specific amount due to each of the defendants seeking the summary judgment.
What the precise factual dispute is with respect to the purpose of the escrow account has not been made clear by the plaintiff. What is established by the affidavits and documentary support is that the money was delivered to the plaintiff in trust to be held by the plaintiff in connection with the representation of the defendants by the plaintiff. That representation has terminated, the money belongs to the various defendants, and there is no factual dispute in this regard.
The claim of the plaintiff that a genuine issue of material fact exists regarding the amount of the fund due to the specific defendants joined in the motion for summary judgment is based on its affidavit stating that other defendants not joined in the motion for summary judgment also claim an interest in the fund. Leaving aside the fact that this bald statement is not supported by CT Page 3515 any other affidavit or documentary evidence, this claim has no bearing on the issue raised by the motion for summary judgment, which is whether the asserted retaining lien in the funds in escrow, whatever the amount, is valid. The precise amount that each defendant is entitled to receive from the fund will be determined by the court at the hearing in damages.
The court has reviewed all of the affidavits and documentary evidence filed by the parties in connection with the motion for partial summary judgment on the first counterclaim and the court finds that the moving defendants have established that there is no genuine issue of material fact with respect to their claim concerning the escrow account, and that they are entitled to partial summary judgment as a matter of law on their first counterclaim.
Accordingly, the motion for partial summary judgment is granted.
Hadden, J.